IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**TRUSTEES OF THE NORTHWESTERN**          Case No. 3:10 CV 739
**OHIO PLUMBERS AND PIPEFITTERS**
**PENSION PLAN, et al.,**

     Plaintiffs,          Magistrate Judge James R. Knepp, II

     v.          BENCH TRIAL OPINION

**HELM & ASSOCIATES, INC.,**

     Defendant.

### INTRODUCTION

This matter is before the Court following a three-day bench trial. Plaintiffs brought suit against Defendant[1] under the Employee Retirement Income Security Act of 1974 (ERISA) seeking to collect unpaid contributions they allege they are owed pursuant to a collective bargaining agreement (CBA). (Doc. 1). At trial, both sides called numerous witnesses and submitted hundreds of pages of exhibits. Subsequently, both sides submitted proposed findings of fact and conclusions of law. (Doc. 142, 143). The issues have now been fully presented.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

*Background*

Defendant Helm & Associates, Inc., is a mechanical contractor that began its business in 1982. (Tr. 153). Defendant is primarily engaged in the construction industry (Doc. 27, at 4), but also does heating, ventilation, and air conditioning (HVAC) as well as electrical contracting (Tr. 133).

---

1. Originally, Plaintiffs also brought suit against Marine Building Group, Inc., but the Court has since dismissed Plaintiffs' claims against Marine. *See* Memorandum Opinion and Order dated October 4, 2011 (Doc. 71).

During the time period relevant to this lawsuit, all of the work Defendant performed took place in the following Ohio counties: Defiance, Fulton, Hancock, Henry, Lucas, Ottawa, Paulding, Putnam, Sandusky, Seneca, Williams, and Wood. (Doc. 129, at 4).

Defendant was bound by the CBA in effect between the Mechanical Contractors Association of Northwestern Ohio, Inc., and the United Association, Local 50 Journeyman and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada (the Local 50 Agreement, Doc. 55-1) for the period of June 30, 2005 until June 29, 2008. (Doc. 55, at 1).

Defendant was bound by the National Service & Maintenance Agreement in effect between the Mechanical Service Contractors of America and the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada (the NSMA, Doc. 55-5) in effect for the period of August 1, 2005 until July 31, 2010. (Doc. 55, at 2).

Plaintiffs are the trustees of four multi-employer fringe benefit funds for plumbers and pipe fitters. The Northwest Ohio Plumbers and Pipe Fitters Health and Welfare Funds (the Funds), which comprise the four funds whose trustees brought this lawsuit, have reciprocal agreements requiring them to return contributions paid for a member of a local other than Local 50 to the member's home local Pension and Health and Welfare funds. (Tr. 10; Pl. Ex. 2; Pl. Ex. 3). However, contributions for the Retirement fund and Retiree Health and Welfare fund paid for members of other locals are not returned. (Tr. 11).

Plaintiffs are parties with standing to sue for contributions owed to the Funds under 29 U.S.C. § 1132(d)(1). (Doc. 55, at 1). Defendant is an employer as defined in 29 U.S.C. § 152(2). (Doc. 55, at 1). The district court has jurisdiction over this case under 29 U.S.C. § 1132(e)(1). Because the parties have consented to the exercise of jurisdiction by a United States Magistrate

Judge (Doc. 43), the undersigned will enter a final judgment in this matter pursuant to 28 U.S.C. § 636(c).

*Audit*

Plaintiffs engaged the firm of Stefansky, Holloway & Nicholas to conduct a payroll audit of Defendant for the period of time beginning February 20, 2009 and ending July 31, 2010 (the audit period). (Tr. 21). The audit was undertaken by Stefansky, Holloway & Nicholas employee Crystal Robinson. (Tr. 72–73). Robinson visited Defendant in October 2009 to collect pay records to help her conduct the audit, but did not receive all of the tax forms and documentation on employees' occupations, hours, and wages that she had requested. (Tr. 75). She did receive documents showing the actual hours worked for all of Defendant's employees other than Keith Helminski, John Schrein, and Gerald Helminski, Sr. (Tr. 91–92; Def. Ex. 2–7). Using the documentation she was given, Robinson published an audit and then multiple revised audits, most recently in November 2011. (Tr. 77–78, 93–94, 100).

Robinson prepared the audits without having received an occupation listing or job description listing from Defendant, but having received various 1099's, a W-3, and unemployment compensation records. (Tr. 79, 99–100). Despite Defendant turning over to Plaintiffs a plethora of daily reports describing the actual work performed,[2] Robinson used estimations for the number of hours worked by, and hourly wage rates for, several employees. (Tr. 79–80, 86, 95). For Defendant's co-owner and vice president Gerald Helminski, Sr., Robinson used the foreman's scale to estimate

---

2. Robinson testified she had never seen a daily report; Plaintiffs' attorneys never provided them to her. (Tr. 96, 109). The daily reports (J. Ex. 5–17) were turned over to Plaintiffs in February 2011, after this Court ruled Plaintiffs had wall-to-wall audit rights for the relevant time period. (Tr. 158–159, 161; Doc. 27).

3

the number of hours Helminski worked, and the hourly rate for foremen to estimate Helminski's hourly wages. (Tr. 85). Robinson also included in the audit every one of Defendant's employees she had records for, because she did not have job descriptions that would have allowed her to exclude certain employees. (Tr. 87). Defendant never provided Robinson a list of its employees' occupations. (Tr. 171).

For most employees, Robinson used rate information supplied to her by the Funds. (Tr. 81). These rates included a change that took effect beginning in June 2009. (Tr. 82). The Health and Welfare Fund rate changed from $6.10 to $6.60, and the Pension Defined Benefits Fund changed from $3.25 to $4.65. (Tr. 82). The Audit Report shows these rates changed again in June 2010. (Pl. Ex. 4). The rate information supplied by the Funds and used by Robinson was not challenged at trial.

In Robinson's final audit, she had removed liability from the work of various employees based on the instructions of Plaintiffs' counsel (Tr. 111), but she still calculated Defendant owes Plaintiffs unpaid contributions in the amount of $363,004.66 plus liquidated damages of 10%, for a total of $399,305.13. (Tr. 88; Pl. Ex. 8).

### Contribution Payments Made by Defendant

Defendant paid contributions to the Laborer's union's employee welfare benefit and pension plans for the hours worked by Defendant's employees Christopher Heinze, Jerry Johnson, Robert Perez, and Edward Sidle during the audit period. (Doc. 129, at 1). Defendant paid contributions to the International Brotherhood of Electrical Worker's (IBEW's) employee welfare benefit and pension plans for the hours worked by Defendant's employee Paul Iwinski during the audit period. (Doc. 129, at 2).

4

Defendant did not make contributions to Plaintiffs for any of the hours worked by Defendant's employees Christopher Heinze, Jerry Johnson, Robert Perez, Edward Sidle, Paul Iwinski, Michael Jones, David Campagna, Jacob Campagna, Quincey Colbert, Thomas Jones, or Edward Sidle II during the audit period. (Doc. 129, at 1).

Defendant paid contributions to UA Local 776's fringe benefit plans for the hours worked by Defendant's employee Mick Jones during the audit period. (Doc. 129, at 2; Tr. 184–193; Def. Ex. 11–12). In March 2010, Plaintiffs received a payment of $1,692.00 from Defendant in the form of contributions for work performed by Mick Jones. (Pl. Ex. 6, at 3; Def. Ex. 10). Believing this payment to be an error because of its reference to Local 776 funds, Plaintiffs returned the payment to Defendant. (Tr. 15–16; Pl. Ex. 6, at 4).

Defendant paid contributions to Plaintiffs for Defendant's employee and co-owner Gerald Helminski, Sr. up through February 2009. (Tr. 175). At that point, Helminski Sr.'s health coverage as a class II employee was terminated and Defendant ceased paying Plaintiffs contributions for his work. (Tr. 175).

### Defendant's Obligation to Pay Contributions

Discussion of Defendant's possible liability in this case must begin with the statute. ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

To recover unpaid contributions required by a CBA, the agreement must create an unambiguous obligation to pay the contributions. *Trs. of B.A.C. Local 32 Ins. Fund v. Ohio Ceiling*

*and Partition Co., Inc.*, 48 F. App'x 188, 194 (6th Cir. 2002) (*OCP I*). If not, "[a]mbiguous language in a CBA purporting to create an obligation on the part of the employer to contribute will be considered in light of the parties' intent." *Trs. For Michigan BAC Health Care Fund v. OCP Contractors, Inc.*, 136 F. App'x 849, 851 (6th Cir. 2005) *(OCP II)*. Legal ambiguity in a CBA requires "two or more reasonable interpretations." *GenCorp. v. American Int'l Underwriters*, 178 F.3d 804, 819 (6th Cir. 1999).

When interpreting language in a CBA, the Court must consider "the context in which the language appears and other traditional canons of construction". *Prater v. Ohio Educ. Ass'n*, 505 F.3d 437, 441 (6th Cir. 2007). "Where the language of the CBA is clear, 'the actual intent or the understanding of the contracting parties is immaterial.'" *OCP II*, 136 F. App'x at 851 (quoting *OCP I*, 48 F. App'x at 192). Because federal law is the exclusive lens through which the duties and obligations in a CBA are examined, "traditional rules of contract interpretation are employed only to the extent they are consistent with federal labor policy." *Cincinnati Typographical Union No. 3, Local 14519 v. Gannett Satellite Info. Network Inc.*, 17 F.3d 906, 909 (6th Cir. 1994).

Defendant was bound by the NSMA, but not the Local 50 Agreement, during the audit period. (Doc. 55, at 2). However, the NSMA created an unambiguous obligation for Defendant to pay contributions, using the Local 50 Agreement as a reference by stating:

> For all Employees covered by this Agreement wage rates, contributions or deductions for fringe benefit plans, programs, or funds, union dues, vacations, holidays, sick pay, International Training Fund (ITF) contributions and industry promotion contributions shall be in accordance with the established local agreement covering service pursuant to paragraph 11 or per a Schedule "A" for the jurisdictional area. . . .
>
> In agreeing to pay fringe benefit funds for Employees established in local agreements, the Employer hereby adopts and agrees to be bound by the written terms of such legally established local trust agreements and the ITF trust agreement

6

specifying the detailed basis on which payments are to be made into, and benefits paid out of, such trust funds. . . . Nothing contained in this paragraph is intended to require the Employer to become a party to, or be bound by, the local collective bargaining agreement except for the fringe benefit fund contributions and other monetary payments and conditions as required herein, nor is any signatory Employer required hereby to assign its bargaining rights or become a member of any employer group or association as a condition for making such contributions. . . .

A signatory Employer of this Agreement is not required to sign any local service agreements.

(Doc. 55-5, at 3, 17, ¶¶ 36–37, 77). Thus, under the NSMA, Defendant was bound by the terms of

the Funds' trust agreement, which included the following definition during the audit period:

The term "Employee" means

(a) Any person who has a common-law employment relationship with an Employer and who is a member of the collective bargaining unit represented by the Union, without regard to membership in the Union. . . .

Employee shall not include any self-employed individual, such as (but not limited to) partners and sole proprietors, regardless of how designated.

(Doc. 55-8, at 1).

The Funds' trust agreement's definition of Employee (with a capital "E", as referenced in

the NSMA's contribution obligation), which is binding upon Defendant under paragraph 37 of the

NSMA, reinforces the intent of the NSMA's preambulatory definition of "Employee": "WHEREAS,

the Employer has employed, now employs and will employ employees, represented by the Union

for the performance of such work, hereinafter called 'Employees[]'". (Doc. 55-5, at 5). Under

paragraph 2 of the NSMA, Defendant recognized the national Union (with a capital "U") as the "sole

and exclusive bargaining representative for all Employees of the Employer performing work covered

by this Agreement or an approved Schedule 'A,' other than supervisors . . . ." (Doc. 1-1, at 5). Thus,

the limitation of "represented by the Union" in the relevant definitions of Employee is superfluous;

by definition, if a person is an Employee, then Employers under the NSMA agree to recognize the Union as representing him so long as he performs covered work. Given these provisions, the parties to the NSMA intended to recognize the Union as the bargaining representative for all common-law employees who perform work covered under the NSMA, without regard to union membership.

When the NSMA says "For all Employees covered by this Agreement" in its contribution obligation language, it means all common-law employees of a signatory Employer who are members of the collective bargaining unit represented by the national Union of plumbers and pipefitters, though not necessarily members of the Union themselves. Because the NSMA recognizes the Union as representing Employees who perform covered work, and the Funds' trust agreement's definition of Employee that the NSMA incorporates explicitly includes non-union members, the Court concludes the NSMA's definition of Employee includes any person with a common-law employment relationship with Defendant who performs plumbing, refrigeration, or mechanical equipment service work. These employees – by virtue of this work – were intended under the NSMA to be members of the collective bargaining unit represented by the national Union of plumbers and pipefitters, even though they may not have actually been plumbers, pipefitters, or mechanical equipment servicemen.

The operation of the NSMA, the Local 50 Agreement, and the Funds' trust agreement created an unambiguous obligation on Defendant to pay fringe benefit contributions to the plans of a local union of plumbers and pipefitters for any employee, without regard to their union membership, for all hours spent performing service work under paragraph 11 of the NSMA. Additionally, under paragraph 36 of the NSMA (quoted above), Defendant was obligated to pay contributions for all hours spent performing Schedule "A" work. However, the Local 50 Agreement has its own, more

8

restrictive, definition of "employee". Because of this, in order for the work to have been covered

work under Defendant's unambiguous NSMA obligation, Schedule "A" work must have been

performed by someone who qualified as an Employee under the Funds' trust agreement and who

was also a "journeyman or apprentice plumber, steamfitter, pipefitter, pipefitter-welder; refrigeration

or air conditioning worker; housing division plumber [or] mechanical equipment serviceman;

employed by an Employer engaged in the work set forth in Schedule 'A'". (Doc. 56-8, at 23).

> Paragraph 11 of the NSMA reads, in full:

> This Agreement shall apply to and cover all work performed by the Employer, and
> all its subsidiaries and branches in the United States, in order to keep existing
> mechanical, refrigeration and plumbing systems within occupied facilities operating
> in an efficient manner. This work shall include the inspection, service, maintenance,
> start-up, testing, balancing, adjusting, repair, modification and replacement of
> mechanical, refrigeration or plumbing equipment including related piping
> connections and controls in addition to all other service, maintenance and operations
> work in order to meet customer obligations. Temporary systems are to be considered
> service work.

(Doc. 55-5, at 7, ¶ 11). Similarly, Schedule "A" of the Local 50 Agreement contains a list of 51

detailed types of plumbing, pipefitting, steamfitting, and mechanical equipment work. (Doc. 55-1,

at 35–37). Accordingly, Defendant was obligated to pay contributions for work by any Employee

under the local trust agreement in order to keep existing mechanical, refrigeration, or plumbing

systems within occupied facilities operating in an efficient manner. Similarly, Defendant was

obligated to pay contributions for the performance of work listed on Schedule "A" by any plumber,

steamfitter, pipefitter, pipefitter-welder, refrigeration or air conditioning worker, housing division

plumber, or mechanical equipment serviceman who was also an Employee under the local trust

agreement.

*Burden Shifting and the Audit Report*

 Relying on *Mich. Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 692 (6th Cir. 1994), Plaintiffs seek to hold Defendant liable for the entire amount calculated in their audit because, they argue, Defendant has failed to maintain adequate records as required by 29 U.S.C. § 1059. In *Grimaldi*, the Sixth Circuit adopted the "sensible approach" taken by the Ninth and Eleventh Circuits with regard to burden shifting in ERISA collection actions. *Grimaldi*, 30 F.3d at 695-696. Under this approach, "an employer is liable for contributions on all hours worked during a period in which it has been demonstrated that some covered work was performed" if, due to poor record keeping by the employer, it is impossible to determine with precision the amount due. *Id.* at 697.

 The defendant in *Grimaldi* failed to provide any documentation at all with respect to 80% of the work performed, and provided only incomplete records with respect to the remaining 20%. *Id.* at 696. The records the defendant did provide failed to specify the number of hours worked. *Id.* at 695. This is simply not analogous to the case at hand. Though Defendant's daily reports are sometimes incomplete, vague, blank, or otherwise inadequate to calculate liability with mathematical exactness (*see* Tr. 366), they do provide enough information from which a reasonably certain calculation can be made, and they do provide detailed information about the vast majority of Defendant's total work hours during the audit period.

 Even though Defendant's records enable a reasonably accurate calculation, Plaintiffs never seriously undertook one. The Audit Report Plaintiffs rely on is inherently excessive and not fully credible. The auditor, Crystal Robinson, was never shown the daily reports Defendant produced through discovery. She included union dues in the audit even though she testified they should not

10

have been included. (Tr. 103). She used an estimation of hours despite Plaintiffs having records showing the actual hours worked. (Tr. 93–95). More importantly, the audit includes liability for nine employees on whose behalf the parties have since stipulated no contributions are owed. (Pl. Ex. 8; Doc. 129, at 3–4). Robinson herself testified the final audit is inaccurate because "there may be workers on [it] who may not necessarily have performed plumbers['] work." (Tr. 100–102). Put simply, the audit is flawed for many reasons, and is not credible enough to represent a fair calculation of Plaintiffs' damages. The Court declines to adopt almost every aspect of the Audit Report.

In addition to the Audit Report's inherent flaws, Defendant further debunked a majority of it at trial by systematically excluding projects Defendant worked on during the audit period from being covered work. Nonetheless, through exhibits admitted into evidence, the parties provided the Court with enough documentation to determine with reasonably fair precision the amount of contributions owed Plaintiffs. Case law suggests a mathematically precise number is not necessary so long as "there is reasonable data from which the amount of damages can be ascertained with reasonable certainty". *New York Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc.*, 657 F. Supp. 2d 410, 422 (S.D.N.Y. 2009). And unlike in *Grimaldi*, in this case it is not utterly impossible to determine with reasonable certainty the extent of Defendant's liability using the records Defendant kept.

Evidence at trial established that the daily reports are the only records Defendant kept which enable one to calculate the contributions owed. The Court admitted over a thousand daily reports into evidence at trial. These reports are occasionally blank, incomplete, unclear, or otherwise inadequate to determine whether covered work was performed and exactly how long it was

11

performed. If the Court were to extend the logic of *Grimaldi*, Defendant could be liable for unpaid contributions stemming from work inadequately described or accounted for by these daily reports, so long as they could possibly represent covered work and the Court would be able to determine whether they do but for Defendant's failure to comply with its statutory record-keeping obligation. However, because Plaintiffs failed to meet their burden under *Grimaldi* to present a reliable audit and show Defendant failed to maintain adequate records such that determining the amount due would be impossible, the Court will not extend *Grimaldi* in such an unprecedented manner. Instead, the Court will only assess liability for the hours the daily reports indicate were covered.

Defendant points the Court toward *Local 282 Welfare Trust Fund, et al. v. A. Morrison Trucking, Inc.*, 1993 WL 120081 (E.D.N.Y 1993). Similar to that case, the Court declines to adopt the results of Plaintiffs' audit because they are clearly incorrect. *Id.* at 3. However, unlike in *Morrison Trucking*, here the hourly rate of contribution here is not unknown or disputed. *Id.* at 2. This case is further distinguishable in that the Court has admitted into evidence records describing the type of work performed by all of Defendant's employees for almost every day they worked during the audit period. In other words, Plaintiffs do not need to rely entirely on the audit to prove they are owed contributions; the daily reports, when examined in light of the testimony presented at trial, provide not only proof of unpaid contributions but also the means with which to determine the extent of contributions owed with reasonable certainty.

In sum, because Plaintiff's Audit Report is mostly unreliable, the Court believes holding Defendant liable for the entire amount calculated by the Audit Report would be unjust and contrary to the backbone premise of *Grimaldi* – that ERISA plans be enabled to collect what they are actually owed at the cost of sometimes collecting more when Defendant's failure to meet a statutory

12

obligation deprives them of the ability to calculate their actual damages. Moreover, despite the flaws and incompleteness of the daily reports, Plaintiffs have not shown the kind of manifest failure to maintain adequate records that the court found in *Grimaldi*. But unlike cases where the amount of covered work could not be determined without reliance upon an audit, here the amount of covered work performed by covered employees can be determined with reasonable certainty using the evidence admitted at trial. The Court has therefore undertaken its own calculation and determined an amount owed based on the daily reports, the testimony presented at trial, and the hourly contribution rates used in the Audit Report. Because the rate information used by the auditor was not disputed at trial, the Court finds the hourly contribution rates used by the auditor to be accurate. Defendant owes Plaintiffs $15.49 per hour of covered work from the beginning of the audit period until June 2009, $17.19 per hour of covered work from June 2009 until June 2010, and $18.39 per hour of covered work from June 2010 through the end of the audit period.

### *The Extent of Covered Work*

Despite the testimony of Defendant's co-owner and president Keith Helminski (Tr. 135), the Court finds that service work on existing heating and air conditioning systems within occupied facilities falls under the scope of Article VII of the NSMA because it is service work on existing mechanical systems within occupied facilities. The NSMA unambiguously envisioned HVAC work to be work on mechanical systems, as evidenced by the mechanical service contractor application Defendant signed to become signatory to it. (Tr. 391–392, 591–593; Pl. Ex. 8). Moreover, to become a journeyman mechanical equipment serviceman with the plumbers and pipefitters union, a person is tested on basic knowledge of HVAC systems. (Tr. 549). The drafters of the NSMA clearly considered HVAC work to be work on mechanical systems.

13

Despite further testimony of Keith Helminski (Tr. 374–378), the Court finds that work such as fixing a leaking toilet or urinal within an occupied facility is covered work under Article VII because it is service work on existing plumbing systems within an occupied facility. The Court further finds the term "occupied facilities" in Article VII unambiguously includes any finished building that is in use by people. (Tr. 595).

***Double Payment Employees***

The first category of Defendant's employees the parties argue about is those for whom Defendant has paid contributions to fringe benefit plans of unions other than Local 50. These employees are Christopher Heinze, Jerry Johnson, Robert Perez, Edward Sidle, Paul Iwinski, and Mick Jones.

The mere fact that an award of benefits could cause an employer to double pay is not itself sufficient to relieve an employer of its contractual obligation to make contributions. *OCP I*, 48 F. App'x at 196–197. In situations where an employer is exposed to conflicting CBAs that purport to impose a duty to double pay, the collecting trustee must show a contractual obligation "to make contributions to both plans, even though only one union did the work." *OCP II*, 136 F. App'x at 851.

Defendant argues *OCP II* suggests there was no such obligation for Defendant, but this case is distinguishable from *OCP II*. In that case, the Sixth Circuit found no unambiguous obligation to double pay, but there, the definition of "employee" in the CBA at issue specified members of the local. That is, the CBA defined "employee" as "Bricklayers & Allied Craftworkers Local Union #9 Michigan of the International Union of Bricklayers and Allied Craftworkers." *Id.* at 852. Here, there is no such limiting definition in the NSMA. Instead, the NSMA applies to and covers "all work performed by the Employer, and all its subsidiaries". (Doc. 55-5, at 4, ¶ 11). And as discussed

14

above, the definition of "Employee" referred to in the NSMA's provision on contributions is intended to include any employee who performs covered work without regard to Union membership. (Doc. 55-7, at 1). Furthermore, the CBA in *OCP II* required that the work be done "under this Agreement". *Id.* Once again, the NSMA contains no such restriction. To the contrary, paragraph 11 is broad and inclusive, covering "all work" done by the Employer to keep certain systems operating efficiently.

This case is also distinguishable from *OCP I*, where two unions claimed the same type of work as covered work under their respective CBAs. *OCP I*, 48 F. App'x at 197–198. Here, no evidence in the record suggests the laborers or electricians unions claim service work on existing plumbing, mechanical, or refrigeration systems within occupied facilities as their own jurisdiction of work. The universe of covered work under Article VII of the NSMA – the only possible covered work for non-plumbers, pipefitters, or mechanical equipment servicemen – was covered by the NSMA and no other CBA Defendant was bound to.

In this case, not only is the applicable definition of covered employee unambiguously broad enough to include members of opposing unions – that is, the definition of "Employee" in the Funds' trust agreement which the NSMA binds Defendant to in order to determine the "detailed basis on which payments are to be made" includes the clause, "without regard for membership in the Union" (Doc. 55-8, at 1) – but other provisions of the NSMA further demonstrate an intent to require contributions without regard to whether they would amount to double payments. For example, Article VII of the NSMA carves out an exception to what the agreement covers for "non-bargaining unit employees" – *i.e.*, employees who are not members of the local plumbers and pipe fitters union and do not perform plumbing or pipefitting work – when such employees are being instructed or

15

trained. (Doc. 55-5, at 7, ¶ 12). If parties to the NSMA did not intend signatory contractors to owe contributions for employees who are members of other unions or no union at all when they perform covered work, this provision would be meaningless surplusage. Similarly, paragraphs 20–23 of the NSMA provide for a situation in which clearly non-Union employees can be Employees (with a capital "E", as in covered employees for whose Article VII service work contributions are owed "in accordance with the established local agreement" under paragraph 36). The Court concludes the NSMA creates an unambiguous obligation to pay contributions for covered work by covered employees regardless of whether such contributions amount to double payments.

Defendant directs the Court to *Outstate Michigan Trowel Trades Pension Fund v. Niles Group, Ltd.*, 2010 WL 2105106 (E.D. Mich. 2010). Unlike that case, the relevant portions of the CBA here do not contain ambiguities and their intent is reinforced by the Funds' trust agreement they reference. In *Niles Group*, the CBA required contribution payments "on all plasterers wherever and whenever employed", but the Court could not determine for sure whether that meant people doing plastering work or solely members of the plasterers union. *Id.* at *5. There is simply no such ambiguity here. The NSMA created an unambiguous obligation upon Defendant to pay contributions to plumbers and pipefitters' fringe benefits plans for all hours covered under paragraph 11 (Article VII) of the NSMA and all hours covered under Schedule "A" of the Local 50 Agreement.

Chris Heinze

Chris Heinze was a member of the Laborer's union who worked for Defendant throughout the audit period. (Tr. 217, 396, 414). Because he had a common-law employment relationship with Defendant, he was an Employee as defined by the NSMA and the Funds' trust agreement to the extent he performed covered work under the NSMA (that is, to the extent he was a member of the

16

bargaining unit represented by the national union of plumbers and pipefitters). He was not a journeyman or apprentice plumber, steamfitter, pipefitter, pipefitter-welder, refrigeration or air conditioning worker, housing division plumber, or mechanical equipment serviceman. (Tr. 219, 416–417).

Because Heinze was not a journeyman or apprentice plumber, steamfitter, pipefitter, pipefitter-welder; refrigeration or air conditioning worker; housing division plumber, or mechanical equipment serviceman, only work covered under the NSMA's provisions – not the work listed on Schedule "A" – constituted covered work by Heinze. The evidence shows Heinze performed a significant number of hours of covered work during the audit period.

Heinze performed work at the University of Toledo Heart and Vascular Center in February and March 2009, but this was in a construction zone, so it was not within an occupied facility. (Tr. 217–218). Similarly, Heinze's work at the Toledo Zoo in the summer of 2009 mainly involved installing a new energy-efficient geothermal system; it did not involve service or maintenance work under Article VII. (Tr. 238–244). Neither of these jobs included covered work because neither involved service work on existing systems within occupied facilities.

In May 2009, Heinze performed work at the water treatment plant in the city of Bellevue. (Tr. 245). Heinze helped install a concrete tank outside of the plant, which required some excavation. (Tr. 246, 248). Heinze performed work at Spartan Chemical in the spring of 2010. (Tr. 250). At this job, Heinze did concrete work to capture leaking hydrogen peroxide. (Tr. 251). Neither of these jobs included covered work.

Heinze performed a great deal of work at Johnson Controls. Most of Heinze's work at Johnson Controls involved lead abatement, and none of his work there included any covered service

17

or maintenance work. (Tr. 220).

Heinze performed covered service work on mechanical systems in March 2009 at NODC, where he fixed a gas leak. (J. Ex. 9, TR000203, Tr. 398). Heinze's work on a boiler at St. Paul's in March 2009 was also covered service work. (J. Ex. 9, TR000210).  But Heinze's work repairing a gas line for the city of Toledo was not covered work. (J. Ex. 9, TR000215, TR000218). Heinze was not a covered employee under the Local 50 Agreement, so the fact this was Schedule "A" work did not obligate Defendant to make contributions for it. Also, it was not service work under the NSMA because it was not performed on an existing system within an occupied facility. Similarly, Heinze's work at the Reynolds Pump Station was basic labor and not covered work. (J. Ex. 9, TR000219–220). As a Laborer, many of Heinze's other work projects during the audit period did not involve covered work.

In June 2009, Heinze performed covered work at Williams Concrete replacing a pump (J. Ex. 9, TR000244), at St. Joseph Church doing HVAC service work (J. Ex. 9, TR000246), and at E.M.S. changing a compressor (J. Ex. 9, TR000247). Heinze's work at the Findlay schools beginning that month was not covered, though, as it was flood mitigation work at unoccupied facilities. (J. Ex. 9, TR000248–259, TR000262–264; Tr. 231).

Beginning in July 2009, Heinze performed work at the University of Toledo (UT) covered under Article VII, servicing plumbing systems within occupied facilities. (J. Ex. 9, TR000276–277, TR000287, TR000299). Similarly, starting in August 2009, Heinze performed covered service work on plumbing systems within occupied facilities at Washington Local Schools. (J. Ex. 9, TR000281, TR000285–286).

Heinze performed covered service work at Owens, replacing piping from an HVAC system

18

within an occupied facility. (J. Ex. 9, TR000289, TR000294–296). Heinze later performed more covered work at Owens, cleaning drains (that is, servicing existing plumbing systems) in an occupied facility. (J. Ex. 9, TR000394). Heinze performed more covered work at UT in August 2009, rerouting a steam trap – servicing an existing HVAC system within an occupied facility. (J. Ex. 9, TR000290).

Heinze's work at Alpine in September 2009 was covered, repairing a leak on an existing plumbing system within an occupied facility. (J. Ex. 9, TR000297). Heinze's work at IAC was also covered as service work on existing mechanical systems, repairing a compressor within an occupied facility. (J. Ex. 9, TR000301–303). That same month, Heinze performed work at the Lucas County Courthouse, repairing a drain. (J. Ex. 9, TR000305). This was covered service work on existing plumbing systems within an occupied facility.

Beginning in February 2010, Heinze performed work at Bowling Green State University (BGSU), repairing and replacing various parts of existing plumbing systems at an ice rink. (J. Ex. 9, TR000372). This work was covered service work under Article VII of the NSMA.

Heinze performed work on various other projects that the Court concludes was covered work under Article VII of the NSMA. (J. Ex. 9, TR000307, TR000311–314, TR000316, TR000318–321, TR000350–353, TR000355, TR000358, TR000365–366, TR000373–375, TR000376–378, TR000381, TR000384–385, TR000392–394, TR000400). If the Court were also assessing liability for contributions owed from Heinze's work for hours the Court is unable to decipher as covered or not due to Defendant's imperfect record keeping, it would result in liability for dozens more hours of work performed by Heinze. (J. Ex. 9, TR000221, TR000241, TR000292, TR000342, TR000349, TR000398, TR000417; Tr. 397–408).

19

In total, the Court concludes Heinze performed 570 hours of covered work during the audit period – 4 hours before the contribution rate changed in June 2009, 559.5 hours between June 2009 and June 2010, and 6.5 hours thereafter. Therefore, Defendant owes Plaintiffs $9,799.30 for contributions stemming from Chris Heinze's work during the audit period.

<u>Ed Sidle</u>

Edward Sidle was a member of the Laborer's union and an employee of Defendant throughout the audit period. (Tr. 253, 434–435). Because he had a common-law employment relationship with Defendant, he was an Employee as defined by the NSMA and the Funds' trust agreement to the extent he performed covered work under the NSMA. During the audit period, he was not a journeyman or apprentice plumber, steamfitter, pipefitter, pipefitter-welder, refrigeration or air conditioning worker, housing division plumber, or mechanical equipment serviceman. (Tr. 259–260, 436–437). But Sidle did perform some covered work under Article VII of the NSMA during the audit period. Because he was not a journeyman or apprentice plumber, steamfitter, pipefitter, pipefitter-welder; refrigeration or air conditioning worker; housing division plumber, or mechanical equipment serviceman, only work covered under the NSMA's provisions – not the work listed on Schedule "A" – constituted covered work by Sidle.

Sidle worked at the pump station on Airport Highway doing renovation work and installing new high-pressure pumps. (Tr. 253). Sidle also did concrete work at this job. (Tr. 259). Similarly, Sidle performed work for Bellevue in June 2009. (Tr. 263). This work was also at a water treatment plant, and involved installing a concrete tank. (Tr. 246, 248, 263). As basic labor at water treatment plants, neither of these jobs included covered service work under Article VII.

Sidle was Defendant's crew leader at the village of Fayette beginning in June 2009, where

he performed work that involved draining sewage from large lagoons and controlling erosion along the banks of the lagoons. (Tr. 264–265). This required some excavation work. (Tr. 266). No work on this job was  performed to maintain existing plumbing, refrigeration, or mechanical systems within an occupied facility. (J. Ex. 11, TR001849–1862, TR001868–1878, TR001887–1908, TR001912–1916; Tr. 440–442). Therefore, this job did not involve covered service work under Article VII of the NSMA.

Sidle performed covered work at a project denoted the Lucas County Center in October 2009, when he worked on piping for existing plumbing systems within an occupied facility. (J. Ex. 11, TR001918).

Sidle performed work for the city of Oregon in the beginning of 2010. (Tr. 272–273, 444–445). This was another water treatment plant project, and involved the installation of a new chlorination system within an unoccupied facility. (Tr. 273–274). Similarly, Sidle worked at BGSU in the spring of 2010, where he helped install a reverse osmosis system at a water treatment plant and insulated tunnels between buildings. (Tr. 274–275). As unoccupied facilities, neither of these jobs included covered work. (Tr. 445; J. Ex. 11, TR001962–1970).

Sidle performed work at the Blanchard Valley Farmers project in May 2010. (Tr. 277). This job consisted of installing a propane vaporizer inside a grain elevator. (Tr. 277). None of the work on this job involved work on existing systems within an occupied facility. (J. Ex. 11, TR002000–2003, TR002005–2009, TR002013; Tr. 452–453). Therefore, none of this work was covered. Later in 2010, Sidle worked at the Toledo Zoo project, where he installed sleeves in the greenhouse and worked on outdoor hydrants. (Tr. 280, 282). This job also did not include any covered work under Article VII of the NSMA because it did not involve service work on existing

21

systems within occupied facilities.

Sidle worked at the Reynolds Pump Station and at Bellevue, and both of these jobs were basic labor not performed to maintain existing plumbing, refrigeration, or mechanical systems within occupied facilities. (Tr. 437–440, 446–447). In fact, the majority of Sidle's work at Bellevue comprised excavation. (J. Ex. 11, TR001810–1814, TR001835). Therefore, this work was not covered under the NSMA.

Sidle also worked at Johnson Controls during the audit period, where he testified he only did lead abatement work. (Tr. 267). None of Sidle's work at Johnson Controls was covered service work. (Tr. 442–444).

Sidle performed work at a fire station in February 2010 that was covered under Article VII because it involved service work on existing plumbing systems within an occupied facility. (J. Ex. 11, TR001971–1974; Tr. 460–463). Similarly, Sidle performed covered work at UT in June 2010, when he did piping work on existing plumbing systems within an occupied facility. (J. Ex. 11, TR002023).

The Court will not assess liability for contributions owed from Sidle's work for hours the Court is unable to decipher as covered or not due to Defendant's deficient record keeping. (J. Ex. 9, TR0001879, TR001917, TR0001992–1993, TR002003–2004, TR002042; Tr. 456–457, 464). In total, the Court concludes Sidle performed 70.5 hours of covered work during the audit period – 66 hours between June 2009 and June 2010, and 4.5 hours thereafter. Accordingly, Defendant is liable for $1,217.30 in contributions stemming from the work performed by Ed Sidle during the audit period.

Bob Perez

Bob Perez was a member of the Laborer's union and an employee of Defendant throughout the audit period. (Tr. 282, 557–558). Because he had a common-law employment relationship with Defendant, he was an Employee as defined by the NSMA and the Funds' trust agreement to the extent he performed covered work under the NSMA. During the audit period, he was not a journeyman or apprentice plumber, steamfitter, pipefitter, pipefitter-welder, refrigeration or air conditioning worker, housing division plumber, or mechanical equipment serviceman. (Tr. 283, 558–559). Because he was not a journeyman or apprentice plumber, steamfitter, pipefitter, pipefitter-welder; refrigeration or air conditioning worker; housing division plumber, or mechanical equipment serviceman, only work covered under the NSMA's provisions – not the work listed on Schedule "A" – constituted covered work by Perez. Perez performed some covered work during the audit period.

Perez worked at the Reynolds Pump Station in February and March 2009. (Tr. 284). He also performed work at Bellevue, UT, Central Middle School in Findlay, and Owens to install a new HVAC system into a building being renovated. (Tr. 286–293; J. Ex. 12). Perez's work at all four of these projects was not covered work because it did not include work on existing systems within occupied facilities. (J. Ex. 12, TR001575–1588, TR001596–1640, TR001643, TR001647–1648, TR001653, TR001655–1657, TR001740; Tr. 559–561, 565–570).

Perez performed work at Johnson Controls, and most of Perez's work there was lead abatement work. (Tr. 561–563). None of Perez's work at Johnson Controls was covered service work..

Perez performed covered work in September 2009 at the Lucas County Courthouse, where he repaired an existing plumbing system within an occupied facility. (J. Ex. 12, TR001661). The following month, Perez repaired a boiler within an occupied facility – also covered under Article

VII. (J. Ex. 12, TR001665–1668, TR001671–1672).

The Court will not assess liability for contributions owed from Perez's work for hours the Court is unable to decipher as covered or not due to Defendant's deficient record keeping. (J. Ex. 12, TR001673, TR001715, TR001750; Tr. 570–576). In total, the Court concludes Perez performed 88 hours of covered work during the audit period – 78 hours between June 2009 and June 2010, and 10 hours thereafter. Accordingly, Defendant is liable for $1,524.72 in contributions stemming from the work performed by Bob Perez during the audit period.

Jerry Johnson

Jerry Johnson was a member of the Laborers union who worked for Defendant during the audit period. (Tr. 296, 472). Because he had a common-law employment relationship with Defendant, he was an Employee as defined by the NSMA and the Funds' trust agreement to the extent he performed covered work under the NSMA. During the audit period, he was not a journeyman or apprentice plumber, steamfitter, pipefitter, pipefitter-welder, refrigeration or air conditioning worker, housing division plumber, or mechanical equipment serviceman. (Tr. 297). Because he was not a journeyman or apprentice plumber, steamfitter, pipefitter, pipefitter-welder; refrigeration or air conditioning worker; housing division plumber, or mechanical equipment serviceman, only work covered under the NSMA's provisions – not the work listed on Schedule "A" – constituted covered work by Johnson. Johnson performed some covered work during the audit period.

Johnson worked at the Reynolds Pump Station, Bellevue, village of Fayette, Johnson Controls, the city of Oregon, the BGSU powerhouse, and UT during the audit period. (Tr. 296, 298–305). Johnson's work at the Reynolds Pump Station, UT, Bellevue, village of Fayette, BGSU,

and the city of Oregon was not covered work because it did not include work on existing systems within occupied facilities. (J. Ex. 13, TR001013–TR001100, TR001102–1139, TR001141–1142, TR001188–1196, TR001201–1226, TR001240–1243, TR001253–1254; Tr. 447–449). Johnson's work at Johnson Controls was also not covered, consisting entirely of lead abatement work. (J. Ex. 13, TR001149–1187, TR001228–1239, TR001244–1252).

Johnson performed work in August 2009 at the Bryan Armory, where he replaced an existing plumbing system, but this work was not within an occupied facility. (J. Ex. 13, TR001101; Tr. 469–470). Therefore, it was not covered work under Article VII. But Johnson did perform covered work in October 2009, when he performed service work on existing mechanical systems within an occupied facility. (J. Ex. 13, TR001140). Johnson performed more covered work in February 2010 at a fire station, where he repaired an existing plumbing system within an occupied facility. (J. Ex. 13, TR001197–1198; Tr. 460–463).

The Court will not assess liability for contributions owed from Johnson's work for hours the Court is unable to decipher as covered or not due to Defendant's deficient record keeping. (J. Ex. 13, TR001139, TR001148, TR001227). In total, the Court concludes Johnson performed 39.5 hours covered work during the audit period, all of which were performed between June 2009 and June 2010. Accordingly, Defendant is liable for $679.01 in contributions stemming from the work performed by Jerry Johnson during the audit period.

Paul Iwinski

Paul Iwinski was a journeyman mechanical equipment serviceman and a journeyman electrician – a member in good standing of both Local 50 and IBEW Local 8 – during the audit period. (Tr. 305–306, 509–510). Iwinski was employed by Defendant throughout the audit period.

25

(Tr. 510–511). Because he had a common-law employment relationship with Defendant, he was an Employee as defined by the NSMA and the Funds' trust agreement to the extent he performed covered work under the NSMA. Because Iwinski was a journeyman mechanical equipment serviceman, Defendant is liable for contributions due to work performed by him that was covered under either the NSMA's provisions or under Schedule "A" of the Local 50 Agreement.

During the audit period, Iwinski performed a substantial amount of covered work. However, he also performed a fair amount of work during the audit period that was electrical in nature, not covered under either the NSMA's provisions or Schedule "A". (J. Ex. 7, TR000913, TR000915, TR000929, TR000945, TR000952–952, TR000967, TR001007; Tr. 317, 528, 532). For example, Iwinski worked at the Elizabeth Scott Retirement Home – an occupied facility – in the beginning of 2010. (Tr. 317). There, Iwinski installed a new electrical circuit. (Tr. 317). Defendant had no obligation to pay Plaintiffs contributions for such work, clearly not covered by Defendant's obligation to Plaintiffs.

Iwinski performed work at the UT Heart and Vascular Center project in the spring of 2009. (Tr. 228, 307–308). This job involved installing a heating and ventilation system in a construction site. (Tr. 513–515). At this project, Iwinski performed some covered piping work under Schedule "A", even though other plumbers were hired by UTMC. (J. Ex. 7, TR000894; Tr. 512–515).

Iwinski performed piping work covered under Schedule "A" for the city of Toledo in April 2009, when he repaired a methane gas line. (J. Ex. 7, TR000851, TR000856). Iwinski performed covered service work under the NSMA at Elizabeth Scott when he repaired an existing plumbing system there in May 2009. (J. Ex. 7, TR000871; Tr. 530–531). Iwinski also performed service work on existing refrigeration systems within an occupied facility at Elizabeth Scott, covered under

Article VII of the NSMA. (J. Ex. 7, TR000943; Tr. 533).

Iwinski performed work at the Washington Local Schools in October 2009, where he removed, demolished, and installed miscellaneous piping and HVAC units. (Tr. 309–310). Iwinski also did the plumbing work at this project. (Tr. 310–311). This was an unoccupied facility at the time. (Tr. 311). Some of Iwinski's work at this project was covered piping work under Schedule "A". (J. Ex. 7, TR000876–878, TR000880–882, TR000890–893, TR000895, TR000911, TR000930, TR000939, TR000941; Tr. 387–388, 517–520, 550, 552).

Iwinski worked at Owens in the fall of 2009, renovating the Humanities building. (Tr. 311–312). This was an unoccupied facility at the time. (Tr. 312). At this project, Iwinski worked on piping connected to the heating and cooling systems within the building, and worked on a variable air volume (VAV) box in the ceiling, installing reheat coils. (Tr. 52–53). Iwinski performed some covered piping and boiler work under Schedule "A" for this project. (J. Ex. 7, TR000899, TR000901–902, TR000904, TR000907, TR000910, TR000912, TR000936, TR000981–982; Tr. 520–521).

Iwinski changed a hot water tank at the Lucas County Department of Aging in October 2009. (Tr. 312–313). This was in a senior center, which, despite Keith Helminski's testimony, was an occupied facility at the time. (Tr. 313–314). Therefore, this was covered service work under Article VII of the NSMA, involving service work on existing mechanical systems within an occupied facility.

Iwinski worked at St. Michael's Church in December 2009. (Tr. 314). This project involved renovating a basement boiler room, which included installing two HVAC boilers. (Tr. 315). Iwinski performed covered piping and boiler work under Schedule "A" at St. Michael's. (J. Ex. 7,

27

TR000928, TR000931–933; Tr. 526, 528–529, 551–552).

Iwinski worked at BGSU in the spring and summer of 2010. (Tr. 319). At this job, Iwinski helped replace a compressor for an ice rink that was being remodeled. (Tr. 321–323). Iwinski performed the electrical portion of this job. (Tr. 324). Iwinski also performed some covered piping work under Schedule "A" at BGSU. (J. Ex. 7, TR000948–949, TR000958–959, TR000963–966, TR000996, TR001011l; Tr. 534–541).

Iwinski worked at the UT North Engineering project in the spring of 2010. (Tr. 325). There, Iwinski did insulation and testing, as well installing temperature controls. (Tr. 325–326). Iwinski performed some covered piping work under Schedule "A" at this project. (J. Ex. 7, TR000970–971, TR000973, TR000976, TR001006, TR001010; Tr. 543–545, 552–553).

Iwinski worked at Johnson Controls in the summer of 2010. (Tr. 326). As Keith Helminski testified, Iwinski performed only lead abatement at Johnson Controls. (Tr. 327). This was not covered work.

Iwinski performed covered piping or boiler work under Schedule "A" at several other miscellaneous jobs: the Central Middle School project  (J. Ex. 7, TR000879), St. Joe's (J. Ex. 7, TR000918), a boiler project on North Huron (J. Ex. 7, TR000924–926), Maumee High School (J. Ex. 7, TR000944), the Port Lawrence project (J. Ex. 7, TR000984, TR000993), Spartan Chemical (J. Ex. 7, TR000962), and the Toledo Zoo greenhouse project (J. Ex. 7, TR001002).

The Court will not assess liability for contributions owed from Iwinski's work for hours the Court is unable to decipher as covered or not due to Defendant's deficient record keeping. (J. Ex. 7, TR000855, TR000872, TR000896, TR000900, TR000903, TR000927, TR000972, TR000977, TR000980, TR001005, TR001009; Tr. 549–550).  In total, the Court concludes Iwinski performed

1,309.5 hours covered work during the audit period – 20.5 hours before the hourly contribution rate changed in June 2009, 1,152 hours between June 2009 and June 2010, and 137 hours thereafter. Accordingly, Defendant is liable for $22,639.86 in contributions stemming from the work performed by Paul Iwinski during the audit period.

<u>Mick Jones</u>

Michael "Mick" Jones was a journeyman plumber and a member in good standing of UA Local 776, based in Lima, Ohio. (Doc. 129, at 2; Tr. 191, 499, 579). He worked for Defendant beginning in April 2007, and continued working for Defendant through the end of the audit period. (Tr. 21, 500). Because he had a common-law employment relationship with Defendant, he was an Employee as defined by the NSMA and the Funds' trust agreement to the extent he performed covered work under the NSMA.

Before starting with Defendant, Jones had the understanding that Local 50 would allow him to work in their territorial jurisdiction so long as he made his presence known at their hiring hall. (Tr. 501). Accordingly, Jones introduced himself at the Local 50 hall before his first day working for Defendant. (Tr. 502). Jones testified the Local 50 business manager cleared him to work in the jurisdiction. (Tr. 504–505, 600–604). However, both the Local 50 and Local 776 business managers at the time refuted the notion Jones had ever been given permission to work within Local 50's territorial jurisdiction. (Tr. 580, 588–590, 605).

Since he began working for Defendant, Jones has been paid Local 50 wages with benefits at the Local 776 rate paid directly to the Local 776 funds, and Jones has maintained health coverage through Local 776. (Tr. 505, 583). After the Local 50 business manager filed a grievance against Jones for a travel card violation – that is, working in Local 50's jurisdiction without clearing it with

29

them or having a portability agreement in place – a fine was levied against him. (Tr. 585).

Defendant argues they used a document entitled Memorandum of Understanding for Employee Portability to bring Mick Jones into the jurisdiction of Local 50. However, the Memorandum – dated July 2007 – requires the employer to "have a collective bargaining agreement signed by both unions involved." (Def. Ex. 9). During the audit period, Defendant was not signatory to a CBA with Local 50. (Tr. 358–359). Rather, as Keith Helminski testified and the parties have stipulated, Defendant withdrew from the Local 50 Agreement effective June 29, 2008. (Doc. 55, at 1). Therefore, the Memorandum could not have applied to prevent Defendant from owing Plaintiffs contributions for covered work performed by Mick Jones during the audit period, which ran from February 20, 2009 until July 31, 2010.

Defendant has also argued that contributions to Local 776 plans end up going to the same place as contributions to Local 50 plans, and therefore Defendant effectively paid the contributions for Mick Jones that it owes. However, even though the payments to Local 776 may have been sent to the same entity – the Trust Company of Toledo – the monies sent go to different funds, as Stephanie DeWitt explained in her testimony. (Tr. 6, 9–10). Contributions for two of the four funds are remitted to a worker's home local, but contributions for the other two funds are not. As former Local 776 business agent Mike Knisley explained in his testimony, "the money follows the man" generally, but pension and benefit plan contributions get remitted to a worker's home local. (Tr. 581, 583–584, 586). Therefore, it is not the case that Defendant's contributions to Local 776 for Mick Jones were essentially contributions to Local 50 merely because the payments were mailed to the same trust company that Local 50 uses. That said, the Court finds no unambiguous obligation created by the NSMA to pay contributions to a second group of fringe benefit plans for plumbers

30

and pipe-fitters.

The reference to a plural, "local agreements", in paragraph 37 of the NSMA creates a slight ambiguity. And the Court concludes the language of the NSMA seeks to protect the jurisdiction of work of plumbers, steam-fitters, pipe-fitters, pipefitter-welders, refrigeration or air conditioning workers, housing division plumbers, and mechanical equipment servicemen, but not necessarily protect the territorial jurisdiction of one local against another. Had Defendant been signatory to the Local 50 Agreement during the audit period, this result would be different. But the Court interprets the NSMA to protect the work of plumbers and pipe-fitters from the use by contractors of non-plumbers and pipefitters; the local agreements with plumbers and pipe-fitters local unions protect the territorial jurisdiction of that work. And in this case, Defendant was not bound by the Local 50 Agreement. At a minimum, Plaintiffs have not shown an unambiguous contractual obligation for signatory contractors to make double contributions to a second local union of plumbers and pipe-fitters when a member of a different local union of plumbers and pipe-fitters performed the work. *See OCP II*, 136 F. App'x at 851.

Mick Jones performed a substantial amount of covered work during the audit period. (Tr. 50–52, 151, 231). But because Defendant paid contributions to UA Local 776 – a United Association of Plumbers and Pipe Fitters under the same parent organization as Local 50 – for the hours worked by Mick Jones, Defendant satisfied any unambiguous obligation created by the NSMA to pay contributions for Jones' work, and Defendant has no liability to Plaintiffs for such contributions.

**Other Employees**

The second category of employees in dispute is those employees for whom Defendant paid

31

no contributions to any fringe benefit plans during the audit period. These employees are Gerry Helminski, Sr., Tom Jones, Jacob Campagna, David Campagna, Quincey Colbert, and Gerry Helminski, Jr.

Gerry Helminski, Sr.

Gerald Helminski, Sr. was Defendant's vice president during the audit period. (Tr. 116, 131). Helminski was also a part-owner of the company, but performed subcontracting work as its employee. (Tr. 131). During the audit period, Helminski was a class II employee, which is how management personnel were designated for health insurance purposes. (Tr. 175). He was also both a journeyman mechanical equipment serviceman and a journeyman plumber and pipefitter. (Tr. 116).

During the audit period, Helminski performed HVAC service and repair work for Defendant including work on boilers, furnances, air conditioning systems, and refrigeration units. (Tr. 117). He also performed brazing for Defendant, which involves the fusing of pipes. (Tr. 117–118). As he admitted in his testimony, he did service work continuously from September 2009 through July 2010. (Tr. 120, 123).

Despite the large quantity of covered work Helminski indisputably performed during the audit period, Defendant owed no contributions for his work. As explained above, Defendant's unambiguous obligation to pay contributions only applied for the covered work of covered employees. Under the NSMA, Defendant was bound by the terms of the Funds' trust agreement, and throughout the audit period that agreement contained the following provision in its definition of "Employee": "Employee shall not include any self-employed individual, such as (but not limited to) partners and sole proprietors, regardless of how designated." During the audit period, Gerry

Helminski, Sr. was a co-owner of Defendant who worked as a self-employed individual. (Tr. 131). A reasonable interpretation of the above-quoted definition is that Helminski, by virtue of his being a self-employed co-owner of Defendant, was intended to be excluded from the group of covered employees for whom Defendant owed contributions. Therefore, the obligation to pay contributions for Helminski's work was ambiguous at best. Defendant has no liability to Plaintiffs for contributions stemming from the work of Gerry Helminski, Sr. during the audit period. *See OCP I*, 48 F. App'x at 194 ("[T]he agreement must create an unambiguous obligation to pay the contributions.").

<u>Tom Jones</u>

Tom Jones was a "general catchall" employee of Defendant without an occupation. (Tr. 328). During the audit period, Jones was not a journeyman or apprentice plumber, steamfitter, pipefitter, pipefitter-welder, refrigeration or air conditioning worker, housing division plumber, or mechanical equipment serviceman. (Tr. 328). Because he had a common-law employment relationship with Defendant, he was an Employee as defined by the NSMA and the Funds' trust agreement to the extent he performed covered work under the NSMA.

Tom Jones performed a substantial amount of covered work during the audit period. (Tr. 374–382; J. Ex. 6). Because he was not a journeyman or apprentice plumber, steamfitter, pipefitter, pipefitter-welder; refrigeration or air conditioning worker; housing division plumber, or mechanical equipment serviceman, only work covered under the NSMA's provisions – not the work listed on Schedule "A" – constituted covered work by Jones. Almost all of Jones' hours during the audit period were spent on HVAC work. (Tr. 329–331). However, Jones performed work at various projects that were not covered. For instance, Jones worked at Johnson Controls several times, and

none of his work there was covered service work.

Throughout the audit period, Jones often performed service work on heating and air conditioning units in occupied facilities. As service work on an existing mechanical system within an occupied facility, this was covered work under Article VII of the NSMA. Jones did this at Pemberville and St. Michael's on multiple occasions. (J. Ex. 6, TR001381–1382, TR001396, TR001407). He also did this for Defendant's customers St. Rose, St. Paul's, St. Joe's, Alpine, Lucas County EMS, Norfolk Southern, Mark Harold, the Maumee Lutheran Home, JJC, ECC Electronic Concepts, and Serenity Haven. (J. Ex. 6, TR001416–1417, TR001421–1422, TR001425, TR001435–1436, TR001454, TR001464–1465, TR001468, TR001474, TR001477, TR001490, TR001492, TR001494–TR001495, TR001500–1501, TR001514, TR001515, TR001529, TR001543, TR001560, TR001565, TR001572).

Jones performed covered service work on existing refrigeration systems at IAC (J. Ex. 6, TR001386–1388, TR001392, TR001401, TR001404, TR001550–1557), JD's (J. Ex. 6, TR001460–1461, TR001463), Elizabeth Scott (J. Ex. 6, TR001411, TR001426), and Wixey Bakery (J. Ex. 6, TR001520).

Jones performed covered service work on existing plumbing systems within an occupied facility when he fixed a leaking toilet at Glass City Credit Union. (J. Ex. 6, TR001391, TR001447, TR001568). Jones also performed covered service work on existing mechanical systems within an occupied facility at Glass City throughout 2009. (J. Ex. 6, TR001414, TR001451–1452, TR001455, TR001530, TR001542, TR001546).

Jones performed covered service work on existing refrigeration systems within an occupied facility when he installed a new coil in a broken freezer at Elizabeth Scott. (J. Ex. 6, TR001392,

TR001419). Jones also performed covered service work on existing plumbing and mechanical systems within an occupied facility at Elizabeth Scott. (J. Ex. 6, TR001420, TR001423, TR001432–1433, TR001445, TR001457–1458, TR001462, TR001476, TR001478, TR001482, TR001528, TR001532, TR001535, TR001548–1549, TR001573).

Jones performed covered service work on existing mechanical systems within an occupied facility at Maumee Self Storage and LCFB in March 2009. (J. Ex. 6, TR001394, TR001399–1400, TR001438).

Jones also performed covered service work on existing plumbing systems within occupied facilities at Westfield, Monclova Church, Red Robin, Maumee High School, a Lucas County building, and an Army Reserve restroom. (J. Ex. 6, TR001398, TR001405, TR001418, TR001424, TR001428–1430, TR001440–1441, TR001485, TR001487, TR001493, TR001504, TR001513; Tr. 408). Jones performed further covered service work, this time on existing mechanical systems within occupied facilities, at Red Robin (J. Ex. 6, TR001489) and the Army reserve building (J. Ex. 6, TR001506, TR001512).

Later on in 2009, Jones performed covered service work on existing mechanical systems within an occupied facility at Arrowhead Behavioral (J. Ex. 6, TR001453, TR001456, TR001496, TR001559, TR001566), Maumee Youth Center (J. Ex. 6, TR001524–1525), and LHS Youth Center (J. Ex. 6, TR001536, TR001541), in addition to the facilities previously mentioned.

The Court will not assess liability for contributions owed from Jones' work for hours the Court is unable to decipher as covered or not due to Defendant's deficient record keeping. (J. Ex. 6, TR001505). In total, the Court concludes Jones performed 478 hours covered work during the audit period – 243 hours before the hourly contribution rate changed in June 2009, and 235 hours between

June 2009 and June 2010. Accordingly, Defendant is liable for $7,803.72 in contributions stemming from the work performed by Tom Jones during the audit period.

Jacob Campagna

Jacob Campagna was not a journeyman or apprentice plumber, steamfitter, pipefitter, pipefitter-welder, refrigeration or air conditioning worker, housing division plumber, or mechanical equipment serviceman, so only work covered under the NSMA's provisions – not the work listed on Schedule "A" – constituted covered work by Jones.[3] Because Campagna had a common-law employment relationship with Defendant, he was an Employee as defined by the NSMA and the Funds' trust agreement to the extent he performed covered work under the NSMA. Despite Defendant's contention that Campagna was an unskilled laborer who did not possess the skills, experience, or credentials to be an apprentice plumber, Campagna's daily reports show he performed a significant amount of covered work.

Campagna performed covered service work on existing mechanical systems in an occupied facility at NODC (J. Ex. 10, TR000080), Visions Ministries (J. Ex. 10, TR000081), the Carranor Club (J. Ex. 10, TR000083; Tr. 383), the Lucas County Courthouse (J. Ex. 10, TR000085, TR000088; Tr. 385–386), and Elizabeth Scott (J. Ex. 10, TR000109).

Campagna performed covered service work on existing plumbing systems in an occupied facility at Monclova Baptist (J. Ex. 10, TR000084; Tr. 383), the Lucas County Courthouse (J. Ex. 10, TR000089; Tr. 384, 386), LMHA (J. Ex. 10, TR000107), and Alpine (J. Ex. 10, TR000108).

---

3. Though Defendant represented to the city of Findlay that Campagna was an apprentice plumber (Tr. 388–389), and it would therefore be estopped from denying this fact with respect to the work Campagna performed in Findlay, Campagna did not perform any Schedule "A" work in Findlay.

The Court will not assess liability for contributions owed from Campagna's work for hours the Court is unable to decipher as covered or not due to Defendant's deficient record keeping. (J. Ex. 10, TR000100). In total, the Court concludes Jones performed 102.5 hours covered work during the audit period – 71 hours before the hourly contribution rate changed in June 2009, and 31.5 hours between June 2009 and June 2010. Accordingly, Defendant is liable for $1,641.28 in contributions stemming from the work performed by Jacob Campagna during the audit period.

David Campagna

David Campagna was a truck driver for Defendant from the beginning of the audit period until June 2009. (Tr. 214, 481–482). During the audit period, he made deliveries between the shop and job sites. (Tr. 214; J. Ex. 14). He was not a journeyman or apprentice plumber, steamfitter, pipefitter, pipefitter-welder, refrigeration or air conditioning worker, housing division plumber, or mechanical equipment serviceman. (Tr. 214, 483–484). Because he had a common-law employment relationship with Defendant, he was an Employee as defined by the NSMA and the Funds' trust agreement to the extent he performed covered work under the NSMA.

David Campagna performed, at most, 34.5 hours of covered work during the audit period. (J. Ex. 14). Because Defendant's records suggest, and cannot disprove, Campagna performed service work under Article VII on August 18, 2009 (J. Ex. 14, TR000032; Tr. 493, 497–498), September 21–25, 2009 (J. Ex. 14, TR000038; Tr. 497–498), and October 29, 2009 (J. Ex. 14, TR000043; Tr. 494–495, 497–498),[4] but no other times, the Court concludes Defendant owes Plaintiffs $593.06 in contributions for the hours worked by David Campagna during the audit period.

Quincey Colbert

---

4. At trial, Campagna himself admitted to helping others perform plumbing work. (Tr. 498).

37

Defendant's employee Quincey Colbert was not a journeyman or apprentice plumber, steamfitter, pipefitter, pipefitter-welder, refrigeration or air conditioning worker, housing division plumber, or mechanical equipment serviceman during the audit period (Tr. 348), so only work covered under the NSMA's provisions – not the work listed on Schedule "A" – constituted covered work by Colbert. Because he had a common-law employment relationship with Defendant, he was an Employee as defined by the NSMA and the Funds' trust agreement to the extent he performed covered work under the NSMA.

Colbert performed a small amount of covered work during the audit period. Specifically, Colbert performed covered service work on existing plumbing systems within an occupied facility at St. Paul's (J. Ex. 15, TR000132), and covered service work on existing mechanical systems within an occupied facility at both Elizabeth Scott and UT (J. Ex. 15, TR000134–135, TR000153).

In total, the Court concludes Colbert performed 22.5 hours covered work during the audit period – 14.5 hours before the hourly contribution rate changed in June 2009, and 8 hours between June 2009 and June 2010. Accordingly, Defendant is liable for $362.13 in contributions stemming from the work performed by Quincey Colbert during the audit period.

Gerry Helminski, Jr.

During the audit period, Defendant's employee Gerry Helminski, Jr. was not a journeyman or apprentice plumber, steamfitter, pipefitter, pipefitter-welder; refrigeration or air conditioning worker; housing division plumber, or mechanical equipment serviceman (Tr. 350), so for most of the audit period, only work covered under the NSMA's provisions – not the work listed on Schedule "A" – constituted covered work by Helminski. Because Helminski had a common-law employment relationship with Defendant, he was an Employee as defined by the NSMA and the Funds' trust

38

agreement to the extent he performed covered work under the NSMA. In addition, Defendant represented to the city of Finday that Helminski was an apprentice plumber. (Tr. 146, 388–390). Defendant is estopped from denying this fact with respect to the work Helminski performed in Findlay. Therefore, any service work under the NSMA Helminski performed during the audit period was covered, and in addition, any Schedule "A" work Helminski performed at the Central Middle School project in Findlay was also covered.

Gerry Helminski, Jr. performed some covered work during the audit period. Helminski performed covered piping work under Schedule "A" at the Central Middle School in Findlay. (J. Ex. 16, TR000454). He also performed covered service work on existing mechanical systems within an occupied facility at St. Joe's when he repaired the air conditioning (J. Ex. 16, TR000462), and performed covered service work on existing plumbing systems within an occupied facility at the Lucas County Courthouse when he repaired a drain. (J. Ex. 16, TR000472).

The Court will not assess liability for contributions owed from Helminski's work for hours the Court is unable to decipher as covered or not due to Defendant's deficient record keeping. (J. Ex. 16, TR000450, TR000451). In total, the Court concludes Helminski performed 18 hours covered work during the audit period, all of which were performed between June 2009 and June 2010. Accordingly, Defendant is liable for $309.42 in contributions stemming from the work performed by Gerry Helminski, Jr. during the audit period.

### 1099 Contractors

The third category of employees at issue in this lawsuit is those persons who worked briefly for Defendant during the audit period and were paid as 1099 independent contractors. These employees were Ed Sidle, II, Craig Jones, and Brian Massey. The Court need not determine whether

these individuals qualified as Employees under the above framework because none of them performed covered work during the audit period.

Neither Ed Sidle, II, Craig Jones, nor Brian Massey was a journeyman or apprentice plumber, steamfitter, pipefitter, pipefitter-welder, refrigeration or air conditioning worker, housing division plumber, or mechanical equipment serviceman during the audit period. The only work each of these three employees performed during the audit period was lead abatement work at Johnson Controls. This was did not involve any mechanical, refrigeration, or plumbing service work, so it was not covered under Article VII of the NSMA. Therefore, Defendant owes Plaintiffs no contributions for the work of Ed Sidle, II, Craig Jones, or Brian Massey.

### *Liquidated Damages, Interest, Costs, and Attorney's Fees*

ERISA provides for mandatory damages to be added to any unpaid contributions a defendant is adjudicated to owe fiduciaries of multiemployer fringe benefit plans:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan –
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court [owed],
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.
>
> For the purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2).

Following this section, because the Court concludes Defendant is liable to Plaintiffs for some

40

amount of unpaid contributions, Plaintiffs must also be awarded interest, liquidated damages, attorney's fees, and any other legal or equitable relief the Court deems appropriate. The total amount of unpaid contributions, as calculated using the findings explained above, is $46,569.79. This is the amount Plaintiffs will be awarded under § 1132(g)(2)(A).

Under § 1132(g)(2)(B), Plaintiffs are entitled to pre-judgment interest on the unpaid contributions. Because no interest rate is given by the Funds, the rate shall be determined using the rate prescribed by 26 U.S.C. § 6621. The rate given in subsection (a)(2) of 26 U.S.C. § 6621 is the appropriate rate to use in ERISA cases where a fiduciary, rather than a beneficiary, sues an employer for unpaid contributions. *Russo v. Unger*, 845 F. Supp. 124, 126 (S.D.N.Y. 1994) (noting the rate of pre-judgment interest used should be appropriate with the goal of making the ERISA plans whole, not with punishing the defendant). This means the appropriate rate in this case is the Federal short-term rate plus three percentage points. 26 U.S.C. § 6621(a)(2). The interest awarded shall be simple, not compounded. *See Carriers Container Council, Inc. v. Mobile S.S. Ass'n, Inc.*, 948 F.2d 1219, 1224 (11th Cir. 1991) (affirming the district court's use of simple, rather than compound, interest under § 1132).

The current Federal short-term rate is 0.24%. Rev. Rul. 2012-20, 2012 WL 2268634, Table 1. Therefore, the correct rate of simple interest to use in this case is 3.24%. Accordingly, Defendant owes Plaintiffs $1,508.86 in pre-judgment interest under § 1132(g)(2)(B).

Under § 1132(g)(2)(C), Plaintiffs are entitled to an additional amount equal to the greater of liquidated damages or the calculated interest. In this case, the liquidated damages provided for under the plans is greater than the interest. The Funds assess liquidated damages of 10% of the total contributions owed (Tr. 16), so $4,656.98 will be added to Defendant's liability under paragraph (C).

41

Under § 1132(g)(2)(D), Plaintiffs are entitled to reasonable attorney's fees and the costs of the action. The Court will determine and award this amount after submission of the appropriate billing information.

Under § 1132(g)(2)(E), Plaintiffs argue that $1,862.00, the cost of the audit, should be added to Defendant's liability. However, because Plaintiffs did not meet their burden of presenting a reliable audit, the Court concludes it would not be appropriate or equitable to award Plaintiffs the cost of their audit.

In total, Plaintiffs are entitled to judgment in the amount of $52,735.63 plus reasonable attorney's fees. Plaintiffs are ordered to submit their attorney's fees petition and related billing records for the Court's consideration within fourteen days of this opinion.

IT IS SO ORDERED.

                                              s/James R. Knepp, II
                                       United States Magistrate Judge

**APPENDIX**

**Chris Heinze**

| Project/Location | Date | Type of Work | Covered Hours | Contribution Rate ($/hr) | Liability ($) |
|---|---|---|---|---|---|
| NODC | 3/18/2009 | HVAC service work | 4 | 15.49 | 61.96 |
| St. Paul's | 3/30/2009 | Boiler service work | 6.5 | 17.19 | 111.735 |
| St. Paul's | 3/31/2009 | Boiler service work | 4 | 17.19 | 68.76 |
| Toledo Zoo | 4/28/2009 | HVAC service work | 11 | 17.19 | 189.09 |
| (Indeterminable) | 5/29/2009 | (Indeterminable) | 0 | 17.19 | 0 |
| Williams Concrete | 6/3/2009 | Plumbing service work | 4 | 17.19 | 68.76 |
| Williams Concrete | 1/25/2010 | Mechanical service work | 6.5 | 17.19 | 111.735 |
| Williams Concrete | 1/27/2010 | Mechanical service work | 4.5 | 17.19 | 77.355 |
| St. Joseph's | 6/11/2009 | HVAC service work | 3 | 17.19 | 51.57 |
| St. Joseph's | 12/29/2009 | Mechanical service work | 8 | 17.19 | 137.52 |
| St. Joseph's | 12/30/2009 | Mechanical service work | 8 | 17.19 | 137.52 |
| E.M.S. | 6/10/2009 | HVAC service work | 8 | 17.19 | 137.52 |
| University of Toledo | 7/28/2009 | Plumbing service work | 3.5 | 17.19 | 60.165 |
| University of Toledo | 7/28/2009 | Plumbing service work | 8 | 17.19 | 137.52 |
| University of Toledo | 8/17/2009 | HVAC and Plumbing service work | 8 | 17.19 | 137.52 |
| University of Toledo | 8/18/2009 | HVAC and Plumbing service work | 8 | 17.19 | 137.52 |
| University of Toledo | 8/19/2009 | HVAC and Plumbing service work | 8 | 17.19 | 137.52 |
| University of Toledo | 8/20/2009 | HVAC and Plumbing service work | 8 | 17.19 | 137.52 |
| University of Toledo | 8/21/2009 | HVAC and Plumbing service work | 6.5 | 17.19 | 111.735 |
| University of Toledo | 8/25/2009 | HVAC service work | 3 | 17.19 | 51.57 |
| University of Toledo | 9/10/2009 | Mechanical service work | 8 | 17.19 | 137.52 |
| University of Toledo | 4/12/2010 | (Indeterminable) | 0 | 17.19 | 0 |
| University of Toledo | 4/13/2010 | (Indeterminable) | 0 | 17.19 | 0 |
| University of Toledo | 4/14/2010 | (Indeterminable) | 0 | 17.19 | 0 |
| University of Toledo | 4/15/2010 | (Indeterminable) | 0 | 17.19 | 0 |
| University of Toledo | 4/19/2010 | Plumbing service work | 8 | 17.19 | 137.52 |
| University of Toledo | 4/22/2010 | Plumbing service work | 10 | 17.19 | 171.9 |
| University of Toledo | 4/23/2010 | Plumbing service work | 9 | 17.19 | 154.71 |

| | | | | | |
|---|---|---|---|---|---|
| Washington Local Schools | 8/3/2009 | Plumbing service work | 4.5 | 17.19 | 77.355 |
| Washington Local Schools | 8/10/2009 | HVAC service work | 8 | 17.19 | 137.52 |
| Washington Local Schools | 8/11/2009 | HVAC service work | 8 | 17.19 | 137.52 |
| Washington Local Schools | 8/12/2009 | HVAC service work | 8 | 17.19 | 137.52 |
| Washington Local Schools | 8/13/2009 | HVAC service work | 8 | 17.19 | 137.52 |
| Washington Local Schools | 8/14/2009 | HVAC service work | 8 | 17.19 | 137.52 |
| Washington Local Schools | 12/23/2009 | Mechanical service work | 8 | 17.19 | 137.52 |
| Washington Local Schools | 12/28/2009 | Mechanical service work | 8 | 17.19 | 137.52 |
| Washington Local Schools | 3/10/2010 | Mechanical service work | 8 | 17.19 | 137.52 |
| Washington Local Schools | 3/11/2010 | Mechanical service work | 8.5 | 17.19 | 146.115 |
| Washington Local Schools | 3/12/2010 | Mechanical service work | 4.5 | 17.19 | 77.355 |
| Owens Tech | 8/25/2009 | HVAC service work | 1.5 | 17.19 | 25.785 |
| Owens Tech | 8/26/2009 | HVAC service work | 8 | 17.19 | 137.52 |
| Owens Tech | 8/27/2009 | HVAC service work | 10 | 17.19 | 171.9 |
| Owens Tech | 8/29/2009 | HVAC service work | 2 | 17.19 | 34.38 |
| Owens Tech | 8/31/2009 | HVAC service work | 10 | 17.19 | 171.9 |
| Owens Tech | 9/1/2009 | HVAC service work | 10 | 17.19 | 171.9 |
| Owens Tech | 9/2/2009 | HVAC service work | 3 | 17.19 | 51.57 |
| Owens Tech | 5/18/2010 | Plumbing service work | 8 | 17.19 | 137.52 |
| Owens Tech | 5/19/2020 | Plumbing service work | 2 | 17.19 | 34.38 |
| (Indeterminable) | 8/25/2009 | Plumbing service work | 5 | 17.19 | 85.95 |
| Alpine | 9/2/2009 | Plumbing service work | 7 | 17.19 | 120.33 |
| Alpine | 9/3/2009 | Plumbing service work | 8.5 | 17.19 | 146.115 |
| IAC | 9/14/2009 | HVAC service work | 8 | 17.19 | 137.52 |
| IAC | 9/15/2009 | HVAC service work | 6 | 17.19 | 103.14 |
| IAC | 9/16/2009 | Mechanical service work | 5.5 | 17.19 | 94.545 |
| Lucas County Courthouse | 9/23/2009 | Plumbing service work | 8.5 | 17.19 | 146.115 |
| 136 Huron Blvd | 9/25/2009 | Boiler service work | 4 | 17.19 | 68.76 |
| 136 Huron Blvd | 10/7/2009 | Boiler service work | 4 | 17.19 | 68.76 |
| 136 Huron Blvd | 10/8/2009 | Boiler service work | 8 | 17.19 | 137.52 |
| 136 Huron Blvd | 10/9/2009 | Boiler service work | 8 | 17.19 | 137.52 |
| 136 Huron Blvd | 10/13/2009 | Boiler service work | 7 | 17.19 | 120.33 |
| 136 Huron Blvd | 10/14/2009 | Boiler service work | 8 | 17.19 | 137.52 |
| 136 Huron Blvd | 10/15/2009 | Boiler service work | 8 | 17.19 | 137.52 |
| 136 Huron Blvd | 10/19/2009 | Boiler service work | 6.5 | 17.19 | 111.735 |
| 136 Huron Blvd | 10/28/2009 | Boiler service work | 8 | 17.19 | 137.52 |
| 136 Huron Blvd | 10/29/2009 | Boiler service work | 8 | 17.19 | 137.52 |
| 136 Huron Blvd | 10/30/2009 | Boiler service work | 8 | 17.19 | 137.52 |

| | | | | | |
|---|---|---|---|---|---|
| 136 Huron Blvd | 10/31/2009 | Boiler service work | 3.5 | 17.19 | 60.165 |
| 136 Huron Blvd | 11/2/2009 | Boiler service work | 8 | 17.19 | 137.52 |
| 136 Huron Blvd | 11/3/2009 | Boiler service work | 8 | 17.19 | 137.52 |
| 136 Huron Blvd | 11/4/2009 | Boiler service work | 2.5 | 17.19 | 42.975 |
| 136 Huron Blvd | 11/5/2009 | Boiler service work | 3.5 | 17.19 | 60.165 |
| 136 Huron Blvd | 11/6/2009 | Boiler service work | 5 | 17.19 | 85.95 |
| 136 Huron Blvd | 11/9/2009 | Boiler service work | 8 | 17.19 | 137.52 |
| 136 Huron Blvd | 11/10/2009 | Boiler service work | 8 | 17.19 | 137.52 |
| 136 Huron Blvd | 11/11/2009 | Boiler service work | 6 | 17.19 | 103.14 |
| Maumee High School | 12/21/2009 | (Indeterminable) | 0 | 17.19 | 0 |
| Maumee High School | 12/22/2009 | (Indeterminable) | 0 | 17.19 | 0 |
| Maumee High School | 12/22/2009 | Mechanical service work | 2 | 17.19 | 34.38 |
| Brennan | 1/13/2010 | Plumbing service work | 3.5 | 17.19 | 60.165 |
| BGSU | 2/22/2010 | Plumbing service work | 11 | 17.19 | 189.09 |
| BGSU | 2/25/2010 | Plumbing service work | 13 | 17.19 | 223.47 |
| Lucas County Community Development Center | 2/26/2010 | Plumbing service work | 8 | 17.19 | 137.52 |
| Lucas County Community Development Center | 3/2/2010 | Plumbing service work | 4 | 17.19 | 68.76 |
| Lucas County Community Development Center | 3/18/2010 | Plumbing service work | 4.5 | 17.19 | 77.355 |
| Lucas County Community Development Center | 3/22/2010 | Plumbing service work | 6 | 17.19 | 103.14 |
| Lucas County Community Development Center | 5/3/2010 | Plumbing service work | 1.5 | 17.19 | 25.785 |
| Lucas County Community Development Center | 5/4/2010 | Plumbing service work | 3 | 17.19 | 51.57 |
| Lucas County Community Development Center | 5/5/2010 | Plumbing service work | 7 | 17.19 | 120.33 |
| Lucas County Community Development Center | 5/6/2010 | Plumbing service work | 8 | 17.19 | 137.52 |
| Spartan Chemical | 4/30/2010 | Plumbing service work | 7 | 17.19 | 120.33 |
| Spartan Chemical | 5/10/2010 | Plumbing service work | 8 | 17.19 | 137.52 |
| Spartan Chemical | 5/11/2010 | Plumbing service work | 7 | 17.19 | 120.33 |
| Lucas County EMS | 6/11/2010 | (Indeterminable) | 0 | 18.39 | 0 |
| University of Toledo | 6/10/2010 | Plumbing service work | 2.5 | 18.39 | 45.975 |
| Toledo Zoo | 6/28/2010 | Mechanical service work | 4 | 18.39 | 73.56 |
| | | | | | |
| | | Totals = | 570 | | 9,799.30 |

**Ed Sidle**

| Project/Location | Date | Type of Work | Covered Hours | Contribution Rate ($/hr) | Liability ($) |
|---|---|---|---|---|---|
| Bryan Armory | 8/5/2009 | Mechanical service work | 6 | 17.19 | 103.14 |
| Senior Center | 10/14/2009 | (Indeterminable) | 0 | 17.19 | 0 |
| Lucas County Center | 10/15/2009 | Plumbing service work | 12 | 17.19 | 206.28 |
| Fire Station | 2/3/2010 | Plumbing service work | 10 | 17.19 | 171.9 |
| Fire Station | 2/5/2010 | Plumbing service work | 10 | 17.19 | 171.9 |
| Fire Station | 2/8/2010 | Plumbing service work | 10 | 17.19 | 171.9 |
| Fire Station | 2/9/2010 | Plumbing service work | 5 | 17.19 | 85.95 |
| University of Toledo | 3/24/2010 | (Indeterminable) | 0 | 17.19 | 0 |
| University of Toledo | 3/29/2010 | (Indeterminable) | 0 | 17.19 | 0 |
| University of Toledo | 3/30/2010 | (Indeterminable) | 0 | 17.19 | 0 |
| University of Toledo | 3/31/2010 | (Indeterminable) | 0 | 17.19 | 0 |
| University of Toledo | 4/1/2010 | (Indeterminable) | 0 | 17.19 | 0 |
| (Indeterminable) | 5/17/2010 | Plumbing service work | 3 | 17.19 | 51.57 |
| (Indeterminable) | 5/18/2010 | Plumbing service work | 10 | 17.19 | 171.9 |
| University of Toledo | 6/11/2010 | Plumbing service work | 4.5 | 18.39 | 82.755 |
| | | **Totals =** | **79.5** | | **1,217.30** |

**Bob Perez**

| Project/Location | Date | Type of Work | Covered Hours | Contribution Rate ($/hr) | Liability ($) |
|---|---|---|---|---|---|
| Lucas County Courthouse | 9/23/2009 | Plumbing service work | 8.5 | 17.19 | 146.115 |
| 136 North Huron Blvd | 10/8/2009 | Boiler service work | 8 | 17.19 | 137.52 |
| 136 North Huron Blvd | 10/9/2009 | Boiler service work | 8 | 17.19 | 137.52 |
| 136 North Huron Blvd | 10/13/2009 | Boiler service work | 6 | 17.19 | 103.14 |
| 136 North Huron Blvd | 10/14/2009 | Boiler service work | 8 | 17.19 | 137.52 |
| 136 North Huron Blvd | 10/15/2009 | Boiler service work | 8 | 17.19 | 137.52 |
| 136 North Huron Blvd | 10/19/2009 | Boiler service work | 7.5 | 17.19 | 128.925 |
| 136 North Huron Blvd | 10/29/2009 | Boiler service work | 8 | 17.19 | 137.52 |
| 136 North Huron Blvd | 11/2/2009 | Boiler service work | 8 | 17.19 | 137.52 |
| 136 North Huron Blvd | 11/3/2009 | Boiler service work | 8 | 17.19 | 137.52 |
| Marblehead | 6/15/2010 | Mechanical service work | 10 | 18.39 | 183.9 |
| | | **Totals =** | **88** | | **1,524.72** |

**Jerry Johnson**

| Project/Location | Date | Type of Work | Covered Hours | Contribution Rate ($/hr) | Liability ($) |
|---|---|---|---|---|---|
| Senior Center | 10/14/2009 | (Indeterminable) | 0 | 17.19 | 0 |
| Lucas County Center | 10/15/2009 | Plumbing service work | 9.5 | 17.19 | 163.305 |
| St. Michael's | 11/2/2009 | Plumbing service work | 10 | 17.19 | 171.9 |
| Fire Station | 2/3/2010 | Plumbing service work | 10 | 17.19 | 171.9 |
| Fire Station | 2/5/2010 | Plumbing service work | 10 | 17.19 | 171.9 |
| (Indeterminable) | 5/3/2010 | (Indeterminable) | 0 | 17.19 | 0 |
| | | | | | |
| | | Totals = | 39.5 | | 679.01 |

**Paul Iwinski**

| Project/Location | Date | Type of Work | Covered Hours | Contribution Rate ($/hr) | Liability ($) |
|---|---|---|---|---|---|
| City of Toledo | 4/17/2009 | Piping work | 8 | 15.49 | 137.52 |
| NLRB | (Indeterminable) | (Indeterminable) | 0 | 15.49 | 0 |
| City of Toledo | 4/24/2009 | Piping work | 5 | 15.49 | 85.95 |
| Elizabeth Scott | 5/21/2009 | Mechanical service work | 4.5 | 15.49 | 77.355 |
| (Indeterminable) | 5/21/2009 | Mechanical service work | 2 | 15.49 | 34.38 |
| (Indeterminable) | 5/22/2009 | Mechanical service work | 1 | 15.49 | 17.19 |
| Washington Local Schools | 6/15/2009-- 5/19/2009 | Piping work | 40 | 17.19 | 687.6 |
| Washington Local Schools | 6/21/2009-- 6/26/2009 | Piping work | 40 | 17.19 | 687.6 |
| Washington Local Schools | 6/29/2009-- 7/3/2009 | Piping work | 42.5 | 17.19 | 730.575 |
| Washington Local Schools | (Indeterminable) | Piping work | 26 | 17.19 | 446.94 |
| Washington Local Schools | (Indeterminable) | Piping work | 24 | 17.19 | 412.56 |
| Washington Local Schools | 7/13/2009-- 7/17/2009 | Piping work | 4 | 17.19 | 68.76 |
| Washington Local Schools | 7/20/2009-- 7/24/2009 | Piping work | 40 | 17.19 | 687.6 |
| Washington Local Schools | 7/27/2009-- 7/31/2009 | Piping work | 40 | 17.19 | 687.6 |
| Washington Local Schools | 8/5/2009-- 8/7/2009 | Piping work | 40 | 17.19 | 687.6 |
| Washington Local Schools | 8/10/2009 -- 8/13/2009 | Piping work | 32.5 | 17.19 | 558.675 |
| Washington Local Schools | 8/14/2009 | Piping work | 16.5 | 17.19 | 283.635 |

| | | | | | |
|---|---|---|---|---|---|
| University of Toledo | 8/21/2009 | Piping work | 3 | 17.19 | 51.57 |
| Washington Local Schools | 8/17/2009--8/21/2009 | Piping work | 29 | 17.19 | 498.51 |
| (Indeterminable) | 8/21/2009 | (Indeterminable) | 0 | 17.19 | 0 |
| Owens Tech | 8/24/2009 | Piping work | 7.5 | 17.19 | 128.925 |
| Owens Tech | 8/25/2009 | Piping work | 10 | 17.19 | 171.9 |
| Owens Tech | 8/26/2009 | Piping work | 10 | 17.19 | 171.9 |
| Owens Tech | 8/27/2009 | Piping work | 9 | 17.19 | 154.71 |
| Washington Local Schools | 8/24/2009 | (Indeterminable) | 0 | 17.19 | 0 |
| Owens Tech | 8/31/2009 | Piping work | 10 | 17.19 | 171.9 |
| Owens Tech | 9/1/2009 | Piping work | 10 | 17.19 | 171.9 |
| Owens Tech | 9/2/2009 | Piping work | 9 | 17.19 | 154.71 |
| Owens Tech | 9/3/2009 | Piping work | 10 | 17.19 | 171.9 |
| Owens Tech | 9/8/2009 | Piping work | 10 | 17.19 | 171.9 |
| Owens Tech | 9/9/2009 | Piping work | 10 | 17.19 | 171.9 |
| Owens Tech | 9/10/2009 | Piping work | 9.5 | 17.19 | 163.305 |
| Owens Tech | 9/11/2009 | Piping work | 9 | 17.19 | 154.71 |
| Washington Local Schools | 9/11/2009 | Piping work | 1.5 | 17.19 | 25.785 |
| Owens Tech | 9/14/2009 | Piping work and HVAC service work | 10 | 17.19 | 171.9 |
| Owens Tech | 9/15/2009 | Piping work and HVAC service work | 8 | 17.19 | 137.52 |
| Owens Tech | 9/16/2009 | Piping work and HVAC service work | 9 | 17.19 | 154.71 |
| Owens Tech | 9/17/2009 | Piping work and HVAC service work | 8 | 17.19 | 137.52 |
| Owens Tech | 9/21/2009 | Piping work | 10 | 17.19 | 171.9 |
| Owens Tech | 9/22/2009 | Piping work | 8 | 17.19 | 137.52 |
| Owens Tech | 9/23/2009 | Piping work | 9 | 17.19 | 154.71 |
| Owens Tech | 9/24/2009 | Piping work | 8 | 17.19 | 137.52 |
| Owens Tech | 9/28/2009 | Piping work and HVAC service work | 9.5 | 17.19 | 163.305 |
| Owens Tech | 9/29/2009 | Piping work and HVAC service work | 9.5 | 17.19 | 163.305 |
| Owens Tech | 9/30/2009 | Piping work and HVAC service work | 9.5 | 17.19 | 163.305 |
| Owens Tech | 10/1/2009 | Piping work and HVAC service work | 9.5 | 17.19 | 163.305 |
| Washington Local Schools | (Indeterminable) | Piping work | 3 | 17.19 | 51.57 |
| Owens Tech | 10/5/2009 | Piping work and HVAC service work | 7.5 | 17.19 | 128.925 |
| Owens Tech | 10/6/2009 | Piping work and HVAC service work | 1 | 17.19 | 17.19 |
| Owens Tech | 10/8/2009 | Piping work and HVAC service work | 4 | 17.19 | 68.76 |

48

| | | | | | |
|---|---|---|---|---|---|
| Owens Tech | 10/9/2009 | Piping work and HVAC service work | 5.5 | 17.19 | 94.545 |
| St. Joseph's | 10/20/2009 | Plumbing service work | 4.5 | 17.19 | 77.355 |
| 136 North Huron Blvd | 10/29/2009 | Boiler service work | 6 | 17.19 | 103.14 |
| 136 North Huron Blvd | 10/30/2009 | Boiler service work | 3.5 | 17.19 | 60.165 |
| 136 North Huron Blvd | 11/6/2009 | Boiler service work | 2 | 17.19 | 34.38 |
| Brennan | 10/27/2009 | Plumbing service work | 2.5 | 17.19 | 42.975 |
| St. Michael's | 11/2/2009 | Piping work | 9 | 17.19 | 154.71 |
| St. Michael's | 11/3/2009 | Piping work | 8 | 17.19 | 137.52 |
| St. Michael's | 11/4/2009 | Piping work | 6.5 | 17.19 | 111.735 |
| St. Michael's | 11/5/2009 | Piping work | 8 | 17.19 | 137.52 |
| St. Michael's | 11/6/2009 | Piping work | 2 | 17.19 | 34.38 |
| Maumee High School | 11/4/2009 | Piping work and plumbing service work | 1.5 | 17.19 | 25.785 |
| St. Michael's | 11/16/2009--11/20/2009 | Piping work | 40 | 17.19 | 687.6 |
| St. Michael's | 11/22/2009--11/27/2009 | Piping work | 36.5 | 17.19 | 627.435 |
| Owens Tech | 12/7/2009 | HVAC service work and piping work | 10 | 17.19 | 171.9 |
| Owens Tech | 12/8/2009 | HVAC service work and piping work | 10 | 17.19 | 171.9 |
| Owens Tech | 12/9/2009 | HVAC service work and piping work | 9 | 17.19 | 154.71 |
| Owens Tech | 12/10/2009 | HVAC service work and piping work | 5 | 17.19 | 85.95 |
| Owens Tech | 12/11/2009 | HVAC service work and piping work | 8 | 17.19 | 137.52 |
| Washington Local Schools | 12/21/2009 | Piping work | 3 | 17.19 | 51.57 |
| Washington Local Schools | 12/22/2009 | Piping work | 9 | 17.19 | 154.71 |
| Washington Local Schools | 12/23/2009 | Piping work | 9 | 17.19 | 154.71 |
| Washington Local Schools | 12/30/2009 | Mechanical service work | 1 | 17.19 | 17.19 |
| Elizabeth Scott | 12/30/2009 | Refrigeration service work | 1 | 17.19 | 17.19 |
| Maumee High School | 12/29/2009 | Piping work and plumbing service work | 4 | 17.19 | 68.76 |
| BGSU | 1/5/2010 | Piping work | 2 | 17.19 | 34.38 |
| BGSU | 1/7/2010 | Piping work | 8 | 17.19 | 137.52 |
| BGSU | 1/8/2010 | Piping work | 8 | 17.19 | 137.52 |
| BGSU | 1/11/2010 | Piping work | 8 | 17.19 | 137.52 |
| BGSU | 1/12/2010 | Piping work | 11.5 | 17.19 | 197.685 |
| BGSU | 1/13/2010 | Piping work | 8 | 17.19 | 137.52 |
| BGSU | 1/14/2010 | Piping work | 4 | 17.19 | 68.76 |
| BGSU | 1/15/2010 | Piping work | 4 | 17.19 | 68.76 |

| BGSU | 2/4/2010 | Piping work | 4 | 17.19 | 68.76 |
|------|----------|-------------|---|-------|-------|
| BGSU | 2/5/2010 | Piping work | 8 | 17.19 | 137.52 |
| BGSU | 2/8/2010 | Piping work | 8 | 17.19 | 137.52 |
| BGSU | 2/9/2010 | Piping work | 3 | 17.19 | 51.57 |
| Spartan Chemical | 2/16/2010 | Piping work | 8 | 17.19 | 137.52 |
| Spartan Chemical | 2/17/2010 | Piping work | 8 | 17.19 | 137.52 |
| Spartan Chemical | 2/18/2010 | Piping work | 8 | 17.19 | 137.52 |
| BGSU | 2/22/2010--2/26/2010 | Piping work | 43 | 17.19 | 739.17 |
| BGSU | 3/1/2010--3/3/2010 | Piping work | 32 | 17.19 | 550.08 |
| BGSU | 3/11/2010 | Piping work | 6 | 17.19 | 103.14 |
| University of Toledo | 4/12/2010 | HVAC service work and piping work | 1 | 17.19 | 17.19 |
| University of Toledo | 4/13/2010 | HVAC service work and piping work | 10 | 17.19 | 171.9 |
| University of Toledo | 4/14/2010 | HVAC service work and piping work | 6 | 17.19 | 103.14 |
| University of Toledo | 4/15/2010 | HVAC service work and piping work | 9.5 | 17.19 | 163.305 |
| University of Toledo | 4/16/2010 | Piping work | 9 | 17.19 | 154.71 |
| University of Toledo | 4/26/2010 | HVAC service work | 10 | 17.19 | 171.9 |
| University of Toledo | 4/27/2010 | HVAC service work | 10 | 17.19 | 171.9 |
| University of Toledo | 4/28/2010 | HVAC service work | 9 | 17.19 | 154.71 |
| University of Toledo | 4/29/2010 | HVAC service work | 8.5 | 17.19 | 146.115 |
| University of Toledo | 4/30/2010 | HVAC service work | 4 | 17.19 | 68.76 |
| University of Toledo | 5/3/2010--5/8/2010 | Piping work | 40 | 17.19 | 687.6 |
| University of Toledo | 5/17/2010 | Piping work | 8.5 | 17.19 | 146.115 |
| University of Toledo | 5/18/2010 | Piping work | 9 | 17.19 | 154.71 |
| University of Toledo | 5/20/2010 | Piping work | 8.5 | 17.19 | 146.115 |
| University of Toledo | 5/21/2010 | Piping work | 6.5 | 17.19 | 111.735 |
| University of Toledo | 5/24/2010--5/29/2010 | (Indeterminable) | 0 | 17.19 | 0 |
| University of Toledo | 6/1/2010 | HVAC service work | 2 | 17.19 | 36.78 |
| Owens Tech | 6/1/2010--6/4/2010 | Piping work | 26.5 | 18.39 | 487.335 |
| Owens Tech | 6/7/2010--6/10/2010 | Piping work | 31 | 18.39 | 570.09 |
| Port Lawrence | 6/14/2010 | Piping work | 5.5 | 18.39 | 101.145 |
| Port Lawrence | 6/15/2010 | Piping work | 4 | 18.39 | 73.56 |
| Port Lawrence | 6/21/2010 | Piping work | 5.5 | 18.39 | 101.145 |
| Port Lawrence | 6/22/2010 | Piping work | 5.5 | 18.39 | 101.145 |
| BGSU | 6/23/2010 | Piping work | 7.5 | 18.39 | 137.925 |

| | | | | | |
|---|---|---|---|---|---|
| BGSU | 6/25/2010 | Piping work | 6.5 | 18.39 | 119.535 |
| Toledo Zoo | 7/6/2010 | Piping work | 2 | 18.39 | 36.78 |
| University of Toledo | 7/8/2010 | (Indeterminable) | 0 | 18.39 | 0 |
| University of Toledo | 7/9/2010 | (Indeterminable) | 0 | 18.39 | 0 |
| University of Toledo | 7/8/2010 | Piping work | 1 | 18.39 | 18.39 |
| University of Toledo | 7/19/2010 | Piping work | 9 | 18.39 | 165.51 |
| University of Toledo | 7/21/2010 | Piping work | 9 | 18.39 | 165.51 |
| University of Toledo | 7/22/2010 | Piping work | 1 | 18.39 | 18.39 |
| University of Toledo | 7/23/2010 | Piping work | 4 | 18.39 | 73.56 |
| University of Toledo | 7/24/2010 | Piping work | 5 | 18.39 | 91.95 |
| BGSU | 7/22/2010 | Piping work | 8 | 18.39 | 147.12 |
| BGSU | 7/23/2010 | Piping work | 4 | 18.39 | 73.56 |
| | | | | | |
| | | **Totals =** | **1,309.5** | | **22,639.86** |

**Tom Jones**

| Project/Location | Date | Type of Work | Covered Hours | Contribution Rate ($/hr) | Liability ($) |
|---|---|---|---|---|---|
| Pemberville | 2/20/2009 | HVAC service work | 2 | | 34.38 |
| St. Michael's | 2/20/2009 | HVAC service work | 4 | 15.49 | 68.76 |
| IAC | 3/2/2009 | Refrigeration service work | 9 | 15.49 | 154.71 |
| IAC | 3/3/2009 | Refrigeration service work | 8 | 15.49 | 137.52 |
| IAC | 3/4/2009 | Refrigeration service work | 8 | 15.49 | 137.52 |
| Glass City | 3/5/2009 | Plumbing service work | 1.5 | 15.49 | 25.785 |
| IAC | 3/6/2009 | Refrigeration service work | 2 | 15.49 | 34.38 |
| Elizabeth Scott | 3/9/2009 | Refrigeration service work | 1.5 | 15.49 | 25.785 |
| Elizabeth Scott | 3/10/2009 | Refrigeration service work | 1 | 15.49 | 17.19 |
| Maumee Self Storage | 3/10/2009 | HVAC service work | 1 | 15.49 | 17.19 |
| St. Michael's | 3/12/2009 | HVAC service work | 5 | 15.49 | 85.95 |
| Westfield | 3/11/2009 | Plumbing service work | 1 | 15.49 | 17.19 |
| LCFB | 3/12/2009 | HVAC service work | 3 | 15.49 | 51.57 |
| Mark W. | 3/12/2009 | HVAC service work | 1 | 15.49 | 17.19 |
| IAC | 3/16/2009 | Refrigeration service work | 3.5 | 15.49 | 60.165 |
| IAC | 3/17/2009 | Refrigeration service work | 2.5 | 15.49 | 42.975 |

| | | | | | |
|---|---|---|---|---|---|
| Monclova | 3/18/2009 | Plumbing service work | 0.5 | 15.49 | 8.595 |
| St. Michael's | 3/20/2009 | HVAC service work | 3 | 15.49 | 51.57 |
| Elizabeth Scott | 3/25/2009 | Refrigeration service work | 1 | 15.49 | 17.19 |
| Glass City | 3/26/2009 | HVAC service work | 1.5 | 15.49 | 25.785 |
| St. Rose | 3/27/2009 | HVAC service work | 1 | 15.49 | 17.19 |
| St. Paul's | 3/30/2009 | Boiler service work | 10 | 15.49 | 171.9 |
| St. Paul's | 3/31/2009 | Boiler service work | 4 | 15.49 | 68.76 |
| Westfield | 4/1/2009 | Plumbing service work | 1 | 15.49 | 17.19 |
| Elizabeth Scott | 4/3/2009 | Refrigeration service work | 5 | 15.49 | 85.95 |
| Elizabeth Scott | 4/3/2009 | Plumbing service work | 1 | 15.49 | 17.19 |
| St. Joseph's | 4/9/2009 | HVAC service work | 3 | 15.49 | 51.57 |
| Merle Norman | 4/7/2009 | HVAC service work | 2.5 | 15.49 | 42.975 |
| Elizabeth Scott | 4/6/2009 | Plumbing service work | 6.5 | 15.49 | 111.735 |
| Monclova | 4/29/2009 | Mechanical service work | 4 | 15.49 | 68.76 |
| (Indeterminable) | 4/27/2009 | HVAC service work | 4 | 15.49 | 68.76 |
| Elizabeth Scott | 4/11/2009 | Refrigeration service work | 1 | 15.49 | 17.19 |
| Red Robin | 4/30/2009 | Plumbing service work | 3.5 | 15.49 | 60.165 |
| Red Robin | 4/28/2009 | Plumbing service work | 4 | 15.49 | 68.76 |
| Monclova | 4/27/2009 | Plumbing service work | 4 | 15.49 | 68.76 |
| Monclova | 4/28/2009 | Plumbing service work | 5 | 15.49 | 85.95 |
| Monclova | 4/29/2009 | Plumbing service work | 5.5 | 15.49 | 94.545 |
| LCFB | 4/30/2009 | HVAC service work | 3.5 | 15.49 | 60.165 |
| Elizabeth Scott | 4/30/2009 | HVAC service work | 1.5 | 15.49 | 25.785 |
| Elizabeth Scott | 5/1/2009 | HVAC service work | 2 | 15.49 | 34.38 |
| Elizabeth Scott | 4/30/2009 | HVAC service work | 2.5 | 15.49 | 42.975 |
| Elizabeth Scott | 5/1/2009 | HVAC service work | 2.5 | 15.49 | 42.975 |
| Alpine | 5/4/2009 | Boiler service work | 3 | 15.49 | 51.57 |
| (Indeterminable) | 5/4/2009 | Mechanical service work | 2 | 15.49 | 34.38 |
| LCFB | 5/4/2009 | HVAC service work | 3 | 15.49 | 51.57 |
| LCFB | 5/5/2009 | HVAC service work | 10 | 15.49 | 171.9 |
| LCFB | 5/6/2009 | HVAC service work | 6 | 15.49 | 103.14 |
| LCFB | 5/7/2009 | HVAC service work | 3.5 | 15.49 | 60.165 |
| Maumee High School | 5/7/2009 | Plumbing service work | 2 | 15.49 | 34.38 |
| Monclova | 5/8/2009 | Plumbing service work | 1.5 | 15.49 | 25.785 |
| Elizabeth Scott | 5/7/2009 | Mechanical service work | 2 | 15.49 | 34.38 |
| Elizabeth Scott | 5/8/2009 | Mechanical service work | 2 | 15.49 | 34.38 |
| Glass City | 5/11/2009 | Plumbing service work | 1 | 15.49 | 17.19 |
| Glass City | 5/12/2009 | HVAC service work | 2 | 15.49 | 34.38 |
| Glass City | 5/13/2009 | HVAC service work | 5 | 15.49 | 85.95 |

| | | | | | |
|---|---|---|---|---|---|
| Glass City | 5/13/2009 | HVAC service work | 2 | 15.49 | 34.38 |
| Arrowhead Behavioral | 5/14/2009 | HVAC service work | 2 | 15.49 | 34.38 |
| Arrowhead Behavioral | 5/15/2009 | HVAC service work | 3 | 15.49 | 51.57 |
| St. Paul's | 5/14/2009 | Mechanical service work | 8 | 15.49 | 137.52 |
| St. Paul's | 5/15/2009 | Mechanical service work | 6.5 | 15.49 | 111.735 |
| Glass City | 5/18/2009 | HVAC service work | 1.5 | 15.49 | 25.785 |
| Arrowhead Behavioral | 5/18/2009 | Mechanical service work | 3 | 15.49 | 51.57 |
| Elizabeth Scott | 5/18/2009 | HVAC service work | 1 | 15.49 | 17.19 |
| Elizabeth Scott | 5/18/2009 | HVAC service work | 2 | 15.49 | 34.38 |
| J.D.'s | 5/20/2009 | Refrigeration service work | 2.5 | 15.49 | 42.975 |
| (Indeterminable) | 5/20/2009 | Refrigeration service work | 6.5 | 15.49 | 111.735 |
| Elizabeth Scott | 5/27/2009 | Mechanical service work | 3 | 15.49 | 51.57 |
| J.D.'s | 5/28/2009 | Refrigeration service work | 2 | 15.49 | 34.38 |
| E.M.S. | 5/27/2009 | HVAC service work | 6 | 15.49 | 103.14 |
| E.M.S. | 5/28/2009 | HVAC service work | 6 | 15.49 | 103.14 |
| E.M.S. | 5/29/2009 | Mechanical service work | 8 | 15.49 | 137.52 |
| E.M.S. | 6/1/2009 | Refrigeration service work | 2 | 17.19 | 34.38 |
| E.M.S. | 6/2/2009 | Refrigeration service work | 6 | 17.19 | 103.14 |
| E.M.S. | 6/10/2009 | Mechanical service work | 8 | 17.19 | 137.52 |
| Elizabeth Scott | 6/11/2009 | Plumbing service work | 2 | 17.19 | 34.38 |
| Norfolk Southern | 6/11/2009 | HVAC service work | 1.5 | 17.19 | 25.785 |
| Elizabeth Scott | 6/11/2009 | HVAC service work | 3 | 17.19 | 51.57 |
| Elizabeth Scott | 6/15/2009 | Plumbing service work | 2.5 | 17.19 | 42.975 |
| Red Robin | 6/17/2009 | Plumbing service work | 2 | 17.19 | 34.38 |
| 701 Adams | 6/19/2009 | Plumbing service work | 4 | 17.19 | 68.76 |
| Red Robin | 6/24/2009 | Boiler service work | 1.5 | 17.19 | 25.785 |
| Alpine | 6/24/2009 | Refrigeration service work | 1 | 17.19 | 17.19 |
| Mark Harold | 6/25/2009 | HVAC service work | 1.5 | 17.19 | 25.785 |
| Army Reserve | 6/25/2009 | Plumbing service work | 4 | 17.19 | 68.76 |
| Lutheran Home | 6/25/2009 | HVAC and plumbing service work | 2 | 17.19 | 34.38 |
| Lutheran Home | 6/26/2009 | HVAC service work | 8 | 17.19 | 137.52 |
| Arrowhead Behavioral | 6/29/2009 | HVAC service work | 3.5 | 17.19 | 60.165 |
| Lutheran Home | 7/1/2009 | HVAC service work | 3 | 17.19 | 51.57 |
| L.D.S. | 7/2/2009 | HVAC service work | 2.5 | 17.19 | 42.975 |
| Army Reserve | 7/8/2009 | Plumbing service work | 1.5 | 17.19 | 25.785 |
| L.D.S. | 7/7/2009 | Mechanical service work | 4 | 17.19 | 68.76 |

| | | | | | |
|---|---|---|---|---|---|
| L.D.S. | 7/9/2009 | Mechanical service work | 1.5 | 17.19 | 25.785 |
| Army Reserve | 7/7/2009 | HVAC and refrigeration service work | 1 | 17.19 | 17.19 |
| Army Reserve | 7/8/2009 | HVAC and refrigeration service work | 4.5 | 17.19 | 77.355 |
| Army Reserve | 7/13/2009 | Plumbing service work | 0.5 | 17.19 | 8.595 |
| Army Reserve | 7/14/2009 | Plumbing service work | 4.5 | 17.19 | 77.355 |
| Monclova | 7/15/2009 | Mechanical service work | 1 | 17.19 | 17.19 |
| Alpine | 7/15/2009 | Mechanical service work | 2 | 17.19 | 34.38 |
| St. Paul's | 7/15/2009 | Mechanical service work | 2 | 17.19 | 34.38 |
| Wixey Bakery | 7/23/2009 | Refrigeration service work | 2 | 17.19 | 34.38 |
| Maumee Youth Center | 7/27/2009 | Mechanical service work | 5 | 17.19 | 85.95 |
| Maumee Youth Center | 7/27/2009 | Plumbing service work | 1 | 17.19 | 17.19 |
| Elizabeth Scott | 8/3/2009 | HVAC service work | 1.5 | 17.19 | 25.785 |
| J.J.C. | 8/4/2009 | HVAC service work | 4 | 17.19 | 68.76 |
| Glass City | 8/4/2009 | HVAC service work | 2 | 17.19 | 34.38 |
| Elizabeth Scott | 8/5/2009 | HVAC service work | 4 | 17.19 | 68.76 |
| Elizabeth Scott | 8/6/2009 | HVAC service work | 2.5 | 17.19 | 42.975 |
| Elizabeth Scott | 8/12/2009 | HVAC service work | 5.5 | 17.19 | 94.545 |
| LHS Youth Center | 8/13/2009 | Boiler service work | 8 | 17.19 | 137.52 |
| LHS Youth Center | 8/14/2009 | Boiler service work | 8 | 17.19 | 137.52 |
| L.C.C.H. | 8/26/2009 | Plumbing service work | 2 | 17.19 | 34.38 |
| L.C.C.H. | 8/27/2009 | Plumbing service work | 7 | 17.19 | 120.33 |
| Glass City | 8/26/2009 | Mechanical service work | 1.5 | 17.19 | 25.785 |
| Mark Harold | 8/26/2009 | HVAC service work | 3 | 17.19 | 51.57 |
| Alpine | 9/2/2009 | Mechanical service work | 8 | 17.19 | 137.52 |
| Glass City | 8/31/2009 | HVAC service work | 4 | 17.19 | 68.76 |
| Glass City | 9/1/2009 | HVAC service work | 8 | 17.19 | 137.52 |
| Elizabeth Scott | 9/8/2009 | Plumbing service work | 5 | 17.19 | 85.95 |
| Elizabeth Scott | 9/9/2009 | Plumbing service work | 5.5 | 17.19 | 94.545 |
| Elizabeth Scott | 9/10/2009 | Plumbing service work | 2 | 17.19 | 34.38 |
| IAC | 9/11/2009 | Mechanical service work | 8 | 17.19 | 137.52 |
| IAC | 9/14/2009 | Mechanical service work | 9 | 17.19 | 154.71 |
| IAC | 9/15/2009 | Mechanical service work | 8 | 17.19 | 137.52 |
| IAC | 9/16/2009 | Mechanical service work | 6.5 | 17.19 | 111.735 |
| IAC | 9/17/2009 | Mechanical service work | 8 | 17.19 | 137.52 |
| IAC | 9/18/2009 | Mechanical service work | 6 | 17.19 | 103.14 |
| Arrowhead Behavioral | 9/21/2009 | HVAC service work | 9.5 | 17.19 | 163.305 |
| ECC Electronic Concepts | 9/22/2009 | HVAC service work | 1 | 17.19 | 17.19 |
| St. Paul's | 9/25/2009 | HVAC service work | 1 | 17.19 | 17.19 |
| Arrowhead Behavioral | 9/28/2009 | HVAC service work | 2 | 17.19 | 34.38 |

| | | | | | |
|---|---|---|---|---|---|
| Glass City | 9/28/2009 | Plumbing service work | 1 | 17.19 | 17.19 |
| Serenity Haven | 9/30/2009 | Refrigeration service work | 3 | 17.19 | 51.57 |
| Elizabeth Scott | 10/1/2009 | HVAC service work | 2 | 17.19 | 34.38 |
| | | **Totals =** | **478** | | **7,803.72** |

**Jacob Campagna**

| Project/Location | Date | Type of Work | Covered Hours | Contribution Rate ($/hr) | Liability ($) |
|---|---|---|---|---|---|
| NODC | 2/24/2009 | Mechanical service work | 2 | 15.49 | 34.38 |
| Visions Ministries | 2/24/2009 | Plumbing service work | 1 | 15.49 | 17.19 |
| Visions Ministries | 2/25/2009 | Plumbing service work | 3 | 15.49 | 51.57 |
| Carranor Club | 2/27/2009 | Mechanical service work | 6 | 15.49 | 103.14 |
| Monclova Baptist | 2/26/2009 | Plumbing service work | 3 | 15.49 | 51.57 |
| Lucas County Courthouse | 3/2/2009 | Plumbing service work | 8 | 15.49 | 137.52 |
| Lucas County Courthouse | 3/3/2009 | Plumbing service work | 2 | 15.49 | 34.38 |
| Lucas County Courthouse | 3/4/2009 | Plumbing service work | 8 | 15.49 | 137.52 |
| Lucas County Courthouse | 3/5/2009 | Plumbing service work | 5 | 15.49 | 85.95 |
| Lucas County Courthouse | 3/25/2009 | Plumbing service work | 7 | 15.49 | 120.33 |
| Lucas County Courthouse | 3/26/2009 | Plumbing service work | 7 | 15.49 | 120.33 |
| Lucas County Courthouse | 3/27/2009 | Plumbing service work | 5 | 15.49 | 85.95 |
| Lucas County | 5/6/2009 | Plumbing service work | 6 | 15.49 | 103.14 |
| Lucas County | 5/7/2009 | Plumbing service work | 8 | 15.49 | 137.52 |
| LMHA | 8/21/2009 | Plumbing service work | 7 | 17.19 | 120.33 |
| Alpine | 9/2/2009 | Plumbing service work | 7 | 17.19 | 120.33 |
| Alpine | 9/3/2009 | Plumbing service work | 8.5 | 17.19 | 146.115 |
| Elizabeth Scott | 9/14/2009 | Mechanical service work | 9 | 17.19 | 154.71 |
| | | **Totals =** | **102.5** | | **1,641.28** |

**David Campagna**

| Project/Location | Date | Type of Work | Covered Hours | Contribution Rate ($/hr) | Liability ($) |
|---|---|---|---|---|---|
| Owens | 8/18/2009 | Mechanical service work | 10 | 17.19 | 171.9 |
| (Indeterminable) | 9/21/2009--9/25/2009 | Refrigeration service work | 20.5 | 17.19 | 352.395 |
| Owens | 10/29/2009 | Refrigeration service work | 4 | 17.19 | 68.76 |

|  |  |  | Totals = | 34.5 |  | 593.06 |
|---|---|---|---|---|---|---|

**Quincey Colbert**

| Project/Location | Date | Type of Work | Covered Hours | Contribution rate ($/hr) | Liability ($) |
|---|---|---|---|---|---|
| St. Paul's | 5/15/2009 | Mechanical service work | 1 | 15.49 | 17.19 |
| Elizabeth Scott | 5/19/2009 | HVAC service work | 5.5 | 15.49 | 94.545 |
| Elizabeth Scott | 5/20/2009 | Mechanical service work | 8 | 15.49 | 137.52 |
| University of Toledo | 7/23/2009 | Mechanical service work | 8 | 17.19 | 137.52 |
|  |  |  |  |  |  |
|  |  | **Totals =** | **22.5** |  | **362.13** |

**Gerry Helminski, Jr.**

| Project/Location | Date | Type of Work | Covered Hours | Contribution Rate ($/hr) | Liability ($) |
|---|---|---|---|---|---|
| Washington Local Schools | 6/24/2009 | (Indeterminable) | 0 | 17.19 | 0 |
| Washington Local Schools | 6/25/2009 | (Indeterminable) | 0 | 17.19 | 0 |
| Washington Local Schools | 6/26/2009 | (Indeterminable) | 0 | 17.19 | 0 |
| Findlay Schools | 6/22/2009 | (Indeterminable) | 0 | 17.19 | 0 |
| Findlay Schools | 6/23/2009 | (Indeterminable) | 0 | 17.19 | 0 |
| Findlay Schools | 6/24/2009 | (Indeterminable) | 0 | 17.19 | 0 |
| Central Middle School | 7/9/2009 | Piping work | 10 | 17.19 | 171.9 |
| St. Joseph's | 8/12/2009 | HVAC service work | 0.5 | 17.19 | 8.595 |
| Lucas County Courthouse | 9/23/2009 | Plumbing service work | 7.5 | 17.19 | 128.925 |
|  |  |  |  |  |  |
|  |  | **Totals =** | **18** |  | **309.42** |

**Summary**

| Employee | Covered Hours | Liability ($) |
|---|---|---|
| David Campagna | 34.5 | 593.06 |
| Chris Heinze | 570 | 9,799.30 |
| Ed Sidle | 79.5 | 1,217.30 |
| Bob Perez | 88 | 1,524.72 |
| Jerry Johnson | 39.5 | 679.01 |

| | | |
|---|---:|---:|
| Paul Iwinski | 1,309.5 | 22,639.85 |
| Craig Jones | 0 | 0 |
| Ed Sidle II | 0 | 0 |
| Brian Massey | 0 | 0 |
| Tom Jones | 478 | 7,803.72 |
| Jacob Campagna | 102.5 | 1,641.28 |
| Gerry Helminski, Sr. | 0 | 0 |
| Mick Jones | 0 | 0 |
| Quincey Colbert | 22.5 | 362.13 |
| Gerry Helminski, Jr. | 18 | 309.42 |
| | | |
| | | |
| **Total =** | **2,742** | **46,569.79** |