IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **TRUSTEES OF THE NORTHWESTERN OHIO PLUMBERS AND PIPEFITTERS PENSION PLAN, et al.,** | Case No. 3:10 CV 739 |
| Plaintiffs, | Magistrate Judge James R. Knepp, II |
| v. | MEMORANDUM OPINION AND ORDER |
| **HELM & ASSOCIATES, INC.,** | |
| Defendant. | |

### BACKGROUND

Before the Court is Plaintiffs' Motion for Attorney Fees and Costs (Doc. 145), timely submitted in accordance with the Court's instructions. Defendant did not file an opposition to Plaintiffs' Motion. As detailed in the Bench Trial Opinion (Doc. 144, at 42), Plaintiffs are entitled to "reasonable attorneys' fees and costs of the action" under 29 U.S.C. § 1132(g)(2)(D). These are mandatory, not discretionary, under the statute for this type of case. *Trustees for Michigan Laborers Health Care Fund v. Eastern Concrete Paving Co.*, 948 F.2d 1290 (Table), *2 (6th Cir. 1991). In their Motion, Plaintiffs ask for an award of $219,792.29 under § 1132(g)(2)(D): $214,453.64 in attorneys' fees and $5,338.65 in costs. (Doc. 145, at 1).

### STANDARD OF REVIEW

The lodestar approach is generally the proper method for determining the amount of reasonable attorneys' fees. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563 (1986). "The most useful starting point . . . is the number of hours reasonably expended on litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). There is a strong presumption this lodestar figure represents a reasonable fee, but the

lodestar does not end the inquiry; the court may adjust it upward or downward in compelling circumstances. *Id.*

To determine if an adjustment is appropriate, the court should analyze the following factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 430, n.3. Adjustments up or down are the exception rather than the rule; a modification to the lodestar figure is proper only in rare and exceptional cases where specific evidence in the record supports it. *Adcock-Ladd v. Sec. of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000); *see also Trustees of the Building Laborers Local 310 Pension Fund v. Able Contracting Group, Inc.*, 2009 WL 792472, at *6 (N.D. Ohio 2009).

It should be noted that in this circuit, courts are not necessarily bound by the lodestar method for awarding fees under 29 U.S.C. § 1132(g) because the statute does not contain the same "prevailing party" language that civil rights fee-shifting statutes contain. *Bemis v. Hogue*, 935 F.2d 269 (Table), at *5–6 (6th Cir. 1991). In *Bemis*, the Sixth Circuit explained that the language and legislative history behind § 1132(g) "provide[] no guidance . . . as to how fee awards should be calculated." *Id.* at *6. The court reasoned civil rights cases – in which the lodestar method is generally applicable, *see Hensley*, 461 U.S. at 433 n.7 – "are seen as benefitting the entire society rather than the pecuniary interests of particular identifiable individuals. In other words, civil rights

2

laws have a significant public-goods character, which the ERISA statute does not." *Id.* Decisions interpreting fee-shifting provisions of civil rights laws are thus "not directly binding" on courts interpreting the ERISA fee-shifting statute, though such decisions may still be instructive. *Id.* Of course, the Court is still obligated to assure the fees awarded are reasonable, and this determination is "committed to the sound discretion of the district court". *Id.* at *7. The Court may take into account prevailing market rates for comparable work, the amount of time necessary to accomplish tasks in the course of the litigation, and the quality of representation provided by counsel, but the Court "must provide some basis for its determination." *Id.*

The Sixth Circuit has never expressly overruled *Bemis*, but has since referred to the lodestar as "[t]he commonly accepted approach for determining reasonableness" in § 1132(g) fee awards. *Iron Workers' Local No. 25 Pension Fund v. MCS General Contractors, Inc.*, 229 F.3d 1152 (Table), at *8 (6th Cir. 2000). In the instant case, the Court will utilize the lodestar method to provide a logical starting point for the reasonableness of attorneys' fees to be awarded Plaintiffs.

## ANALYSIS

For the first step of the lodestar – determining the reasonable hourly rate to be applied – courts initially assess the "prevailing market rate in the relevant community". *Adcock-Ladd*, 227 F.3d at 350. The prevailing market rate can be demonstrated in a number of ways including affidavits from attorneys or experts; citations to prior precedents showing reasonable rate adjudications for comparable attorneys or cases; references to fee award studies showing reasonable rates charged or awarded in the relevant community; testimony from experts or other attorneys in the relevant community; discovery rates charged by the opposition party; and reliance on the court's own expertise in recognizing applicable prevailing rates. *Disabled Patriots of Am. v. Gensis*

3

*Dreamplex, LLC*, 2006 WL 2404140, at *2 (N.D. Ohio 2006).

Here, Plaintiffs use an hourly rate of $200 for attorneys Diana Robinson[1] and Amy Zawacki, and an hourly rate of $300 for attorneys Marilyn Widman, Michael Heffernan, and William Webster. (Doc. 145, at 4). In support of these hourly rates, Plaintiffs submit affidavits from outside attorneys specializing in ERISA matters testifying to the prevailing market rates for ERISA attorneys in Ohio. (Docs. 145-4, 145-5). Plaintiffs also submit affidavits detailing the experience of each billing attorney handling ERISA matters, and the opinions of some of those attorneys on the prevailing market rates in the community. (Doc. 145-1, 145-6, 145-7, 145-8). These affidavits also testify to the scope and extent of work each billing attorney performed on this case. Based on the affidavits submitted, the Court finds the hourly rates of $200 for associate attorneys and $300 for experienced ERISA attorneys to be reasonable in this case. *See also Mikolajczyk v. Broadspire Services, Inc.*, 499 F. Supp. 2d 958, 965 (N.D. Ohio 2007) (finding hourly rate of $250 reasonable in an ERISA action); *Kauffman v. Sedalia Med. Ctr., Inc.*, 2007 WL 490896, at *3 (S.D. Ohio 2007) (finding hourly partner rates of $300–325 and hourly associate rates of $200–235 reasonable in an ERISA action). The Court also finds the hourly rate of $85 for an unlicensed law clerk to be reasonable. Additionally, the Court finds the hourly rates of $50 to $80 for the work of legal assistants and paralegals to be reasonable.

With respect to the hours worked by each attorney – the second component of the lodestar formula – the Court should exclude from the initial fee calculation "hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434. Excessive, redundant, or otherwise unnecessary hours should

---

1. Plaintiffs also use an hourly rate of $85 for the time expended by Diana Robinson before she became licensed to practice law. (Doc. 145, at 4; 145-1, at 8).

4

be excluded because "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Id.* (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980)). Furthermore, because of the congressional intent to limit awards to prevailing parties, no fees should be awarded for services on unsuccessful claims.[2] *Id.* at 435.

Here, Plaintiffs submit records showing attorney Widman worked 140.267 hours; attorney Heffernan worked 71.1833 hours; attorney Webster worked 111.075 hours; attorney Robinson worked 535.45 hours as an attorney and 24.8 hours as an unlicensed law clerk; attorney Zawacki worked 1.9 hours; and various legal assistants and paralegals worked 104.29 hours. (Docs. 145-2, 145-3). After a thorough review of the hours detailed in Plaintiffs' billing records, the Court believes a few subtractions should be made for work attributable to unsuccessful claims.

Initially, Plaintiffs sought to hold Marine Building Group liable as Defendant's alter ego – a claim which the Court dismissed through summary judgment in October 2011. (Doc. 71, at 6–10). Plaintiffs' billing records show Plaintiffs' attorneys expended a fair amount of time discovering into Marine and developing this claim. Specifically, attorney Robinson spent 21.95 hours fairly attributable to the Marine claim (Doc. 145-2, at 21–24, 25–27, 30, 32; Doc. 145-3, at 3); attorney Widman spent 7.05 hours fairly attributable to the Marine claim (Doc. 145-2, at 7, 23–24, 26, 30; Doc. 145-3, at 5); and attorney Webster spent 1.5 hours fairly attributable to the Marine claim (Doc. 145-2, at 7). In addition, a paralegal spent 3.25 hours fairly attributable to the Marine claim. (Doc. 145-2, at 8, 24). The Court finds it reasonable to subtract these hours from the hours otherwise expended on the litigation to calculate the lodestar amount. The initial lodestar calculation is thus:

---

2. The Court recognizes this aspect of *Hensley* is not binding given the Sixth Circuit's opinion in *Bemis* because it is based on the "prevailing party" language not present in § 1132(g), but the Court nonetheless finds it reasonable in this case to not award fees for work spent on unsuccessful claims.

Attorney Marilyn Widman: 133.217 hours x $300.00 per hour = $39,965.10

Attorney Michael Heffernan: 71.1833 hours x $300.00 per hour = $21,354.99

Attorney William Webster: 109.575 hours x $300.00 per hour = $32,872.50

Attorney Diana Robinson: 513.50 hours x $200.00 per hour = $102,700.00

24.8 hours x $85.00 per hour = $2,108.00

Attorney Amy Zawacki: 1.9 hours x $200.00 per hour = $380.00

Legal assistants and paralegals: 4.1 hours x $50.00 per hour = $205.00

3.88 hours x $55.00 per hour = $209.00

1.03 hours x $75.00 per hour = $77.25

92.03 hours x $80.00 per hour = $7,362.40

Total = $207,234.20

But this is not the end of the story. Considering the amount involved and the results obtained, as well as awards in similar cases – both among the factors to be considered in determining if the lodestar calculation should be adjusted, *see Hensley*, 461 U.S. at 430 n.3 – the Court believes a downward deviation from the lodestar is appropriate. "[T]he Supreme Court has rejected the argument that attorneys' fees must always be proportionate to the size of a damage award." *Woolridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990) (citing *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986)) (abrogated on other grounds by *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001)); *see also Hensley v. Eckerhart*, 461 U.S. 424, at 435 (1983) ("Where a plaintiff has obtained excellent results . . . the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit"). However, as the Court explained in the Bench Trial Opinion (Doc. 144, at 10–12),

6

Plaintiffs failed to meet their burden of presenting a reliable audit from which the Court could determine damages or shift the burden to Defendant to disprove damages in accordance with *Michigan Laborers Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 692 (6th Cir. 1994). As a result, the results reached by Plaintiffs in this case could fairly be categorized as partial or limited success; Plaintiffs were awarded $46,569.79 in unpaid contributions while claiming they were owed $363,004.66 – a recovery of about 13% the amount sought. (Doc. 144, at 4, 41); *See Hensley*, 461 U.S. at 436 ("If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.").

Plaintiffs argue their primary objective was to prevail on the issue of whether Defendant was required to contribute to Plaintiffs on behalf of their union represented employees even though Defendant made contributions to other unions' funds for those same hours. (Doc. 145, at 9). Thus, Plaintiffs argue they "obtained a high level of success in this case" because "the ruling on this issue will send a message to contractors". (Doc. 145, at 9). But Plaintiffs' limited recovery tilts the scales toward a reduction in attorneys' fees despite this aspect of their success because Plaintiffs' attorneys did not undertake the work necessary to pinpoint their actual damages with precision. Instead, Plaintiffs relied on the flawed Audit Report at trial in the hopes of obtaining a windfall under the *Grimaldi* framework. By their failure to properly audit Defendant's daily reports for covered work, Plaintiffs forced the Court to conduct its own audit by analyzing more than a thousand pages of records to make its own calculation of liability. But for the joint exhibits admitted by both parties at trial, Plaintiffs' recovery would have been *drastically* limited.

Plaintiffs argue their failure to submit a reliable audit was due to Defendant presenting

7

evidence at trial not previously presented to Plaintiffs. For instance, Plaintiffs say they were unaware the vast majority of work performed at Johnson Controls was lead abatement and not covered work, and that such knowledge would have resulted in them reducing the audit's calculated covered hours by the number of hours worked at Johnson Controls. But Plaintiffs could have discovered the nature of this, and any other, specific projects Defendant worked on during the audit period. In fact, Plaintiffs' billing records indicate they subpoenaed several of Defendant's project owners. (Doc. 145-2, at 25–27). The Court therefore finds this argument unavailing.

In such a case, where a reduction from the lodestar amount is appropriate, "[t]here is no precise rule or formula . . . . The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 437. Here, given the Court's ruling was derived from a method of analysis not undertaken by Plaintiffs' attorneys, the Court finds it reasonable to reduce the calculated lodestar amount by two-thirds. Considering the scope and extent of the litigation, this reduced amount – $69,078.08 – is fully consistent with, and reasonable in light of, other attorneys' fees awards under § 1132(g)(2) in comparable ERISA cases in this region. *See Building Service Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1395–1405 (6th Cir. 1995) (directing the district court to award $81,111.20 in attorneys' fees under § 1132(g)(2) after a three-day bench trial from which a multi-employer benefit plan recovered $25,316.51 in delinquent contributions); *Plumbers Local 98 Defined Benefit Pension Fund v. Premier Plumbing and Mechanical, LLC*, 2006 WL 2623370, at *1–3 (E.D. Mich. 2006) (awarding $19,223 in attorneys' fees under § 1132(g)(2) after a multi-employer fringe benefit plan won $25,206.77 in unpaid contributions from an unopposed summary judgment motion); *Iron Workers' Local No. 25 Pension Fund v. McGuire Steel*

*Erection, Inc.*, 2004 WL 3105944, at *9–10 (E.D. Mich. 2004) (awarding $29,895.00 in attorneys' fees under § 1132(g)(2) after granting summary judgment in favor of multi-employer fringe benefit funds for $54,513.20 in unpaid contributions); *Trustees of Painters Union Deposit Fund v. D.D.I., Inc.*, 2006 WL 2973844, at *1 (E.D. Mich 2006) (awarding $450.60 in attorneys' fees under § 1132(g)(2) following a default judgment for unpaid contributions in the amount of $1,802.40); *Boards of Trustees of Ohio Laborers' Fringe Benefit Programs v. Blaze Const., Inc.*, 2002 WL 31951267, at *5–7 (S.D. Ohio 2002) (awarding $4,612.50 in attorneys' fees under § 1132(g)(2) after granting an employee trust fund summary judgment for $39,110.55 in unpaid fringe benefit contributions).

The reduced amount is also consistent with discretionary ERISA fee awards (held to the same reasonableness standard) in the region. *See Kauffman v. Sedalia Medical Center, Inc.*, 2007 WL 490896, at *3 (S.D. Ohio 2007) (awarding $73,688.84 for the work of two attorneys to collect $99,742 in pension benefits through a motion for judgment on the administrative record); *Mikolajczyk v. Broadspire Services, Inc.*, 499 F. Supp. 2d 958, 967 (N.D. Ohio 2007) (awarding $51,989.50 for attorneys who won summary judgment to collect long-term disability benefits from an ERISA plan administrator); *Friley v. UNUM Provident*, 2006 WL 561852, at *5 (N.D. Ohio 2006) (awarding $57,612.50 in attorneys' fees following two years of litigation to collect long-term disability benefits). The Court will therefore award Plaintiffs this reduced amount as their reasonable attorneys' fees.

With respect to the costs of the action, Plaintiffs submit billing records showing $5,338.65 in expenses. (Doc. 145-2, at 1–5 84–85). These costs comprise deposition transcript fees; filing fees; postage, copying, and miscellaneous materials expenses; parking costs; and witness fees. On review

of these expenses, the Court finds all of them to be reasonable costs of the action under 29 U.S.C. § 1132(g)(2)(D). Therefore, this amount will be added to the judgment.

## CONCLUSION

For the above-stated reasons, Plaintiffs' Motion for Attorney Fees and Costs (Doc. 145) is granted in part. In addition to the previously-determined liability of $52,735.63, Plaintiffs are entitled to $69,078.08 in attorneys' fees and $5,338.65 in costs. The Court will enter a final judgment of $127,152.36.

IT IS SO ORDERED.

                                                     s/James R. Knepp, II
                                               United States Magistrate Judge